**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Anthony DARWIN, Defendant-Appellant.**

**No. 83–3211.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 28, 1984.

Stephen J. Finta, Fort Lauderdale, Fla., for defendant-appellant.

Andrew Grosso, Asst. U.S. Atty., Tampa, Fla., for plaintiff-appellee.

Before HENDERSON and CLARK, Circuit Judges, and ATKINS *, District Judge.

CLARK, Circuit Judge:

The defendant was convicted in the Middle District of Florida of bond jumping, in

---

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

violation of 18 U.S.C. § 3150(1).[1] He was sentenced to fifteen years, as a dangerous special offender, pursuant to 18 U.S.C. § 3575, and this appeal followed.

Darwin addresses himself to a number of issues on appeal, most of which either were waived for failure to raise them at trial, or are simply without merit.[2] The only issue preserved on appeal that is of particular significance pertains to his sentencing under the dangerous special offender, or enhancement, statute. That statute provides in relevant part:

> (a) Whenever an attorney charged with the prosecution of a defendant in a court of the United States for an alleged felony committed when the defendant was over the age of twenty-one years has reason to believe that the defendant is a dangerous special offender such attorney, a reasonable time before trial or acceptance by the court of a plea of guilty or nolo contendere, may sign and file with the court, and may amend, a notice (1) specifying that the defendant is a dangerous special offender who upon conviction for such felony is subject to the imposition of a sentence under subsection (b) of this section, and (2) setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender. *In no case shall the fact that the defendant is alleged to be a dangerous special offender be an issue upon the trial of such felony, be disclosed to the jury, or be disclosed before any plea of guilty or nolo contendere or verdict or finding of guilty to the presiding judge without the consent of the parties. . . .*

18 U.S.C. § 3575(a) (emphasis added).

In this appeal, Darwin argues that he was improperly sentenced under the stat-

ute because the government disclosed to the trial judge prior to a verdict that the defendant was alleged to be a dangerous special offender. The facts relevant to disposition of this issue are as follows:

Darwin's trial began on December 6, 1982. The verdict was returned on December 9. At a status conference held on December 22, the district judge revealed that on the morning of December 8 he had received an envelope from the Criminal Clerk addressed to him and marked "in camera." He opened it and read "about the first four lines" of the document therein, captioned "Notice of intent to request sentencing of the defendant as a dangerous special offender." The first sentence of the notice, spanning seven lines, stated:

> Comes now the United States Attorney by and through its undersigned Assistant United States Attorney and in compliance with Title 18, United States Code, Section 3575(a) files this notice of the Government's intent to specify that Anthony Darwin is a dangerous special offender within the meaning of Section 3575 of Title 18, United States Code, and in support thereof states the following.

Realizing that he was forbidden to see such a notice prior to a jury verdict, the experienced trial judge resealed the document in the envelope and did not reopen it until December 10, after a verdict was returned. At the December 22 hearing, the district court ruled that notwithstanding a technical violation of the special offender statute, the error was wholly non-prejudicial; the court therefore declined to dismiss the dangerous special offender notice.

■ An understanding of the purpose and effect of the requirement that "in no

---

**1.** The conviction in this case arose out of Darwin's failure to appear for a bond reduction hearing following his arrest and release on charges of making false statements to the FAA in an application for an airman medical certificate, in violation of 18 U.S.C. § 1001. He was convicted of that offense as well, and his conviction was affirmed on appeal (*United States v. Darwin*, 744 F.2d 96 (11 Cir.1984)).

**2.** Issues raised but rejected include: 1) whether the district court erred in refusing to deliver jury instructions requested respecting duress and wilfulness; and 2) whether certain testimony of Agent Funes should have been excluded under Rule 403 of the Federal Rules of Evidence.

case shall the fact that the defendant is alleged to be a dangerous special offender ... be disclosed ... before any ... verdict or finding of guilty to the presiding judge" is facilitated by reference to the legislative history of the dangerous special offender statute, which was discussed in depth in *United States v. Bailey*, 537 F.2d 845 (5th Cir.1976).[3] As originally drafted in the Senate, the statute would have proscribed divulging allegations that the defendant was a dangerous special offender to the jury, but not the judge. S.Rep. 91–617, 91st Cong., 1st Sess. 162–63 (1969); *Bailey*, 537 F.2d at 848. The House, however, modified the Senate bill so as to prohibit disclosure of the special offender notice to the presiding judge, over the objection of the Justice Department that concluded there was no reason to believe that a court would be prejudiced by knowledge of the dangerous special offender notice. *Bailey*, 537 F.2d at 848.

In the *Bailey* case, it was undisputed that the prosecuting attorney "in open court in the absence of the jury but in the presence of the judge, announced that a 'dangerous special offender' notice had been filed against three of the defendants." *Bailey*, 537 F.2d at 847. The United States Attorney argued that the statute was intended to prohibit disclosure of the allegations within the notice but not the bare fact that a notice had been filed. The court responded as follows:

> [T]he United States Attorney's argument fails because the statute when literally read prohibits any kind of disclosure of the notice to the presiding judge and the government in this criminal case should be held strictly to the literal language of the Act. While the statute's literal prohibition against disclosure may be "anomalous" as the district judge concluded, action to remove the anomaly is a matter

for the consideration of Congress. Because the government here failed to comply strictly with the statutory prerequisites for enhancement, the enhanced portion of the defendant's sentences must be overturned.

*Id.* at 849.

■ In the recent decision of *United States v. Pugh*, 720 F.2d 1255 (11th Cir. 1983), the United States put a notice alleging that the defendant was a dangerous special offender in a sealed envelope, which was improperly placed in the court file before the district court ruled on a motion of the defendant to suppress evidence (a different judge presided at the trial). The envelope was not opened until after a verdict was returned, but on the face of the envelope was typed a citation to the special offender statute. In affirming the defendant's sentencing under the special offender statute, the court of appeals observed that there was no evidence in the record indicating that the judge was aware of the envelope or that the United States Code citation on it referred to the dangerous special offender statute; moreover, "even the speculative chance that the judge presiding over the motion to suppress might have inadvertently become aware that Pugh was alleged to be dangerous would have been harmless error," because the court's ruling denying Pugh's motion to suppress was the "only correct ruling." *Id.* at 1259.[4]

■ We are compelled to conclude that *Bailey* controls, and not *Pugh*. In *Pugh*, there was no showing that the judge knew the special offender notice had been filed, and all indications are to the contrary. In this case, as in *Bailey*, the judge was clearly on notice. In *Pugh*, the court speculated that even if the judge might have known that the statute was being invoked, the

---

**3.** *Bailey* is a binding decision of the former Fifth Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

**4.** Limiting harmless error analysis to situations in which the court made the "only correct ruling" is consistent with the very stringent and literal reading courts have given the statute.

*Bailey, supra; United States v. Taylor,* 716 F.2d 701, 712–13 (9th Cir.1983) (the statute unambiguously provides that the fact of the notice "shall" not be disclosed prematurely and the "Government's contention that the disclosure did not affect the trial judge is pure speculation").

resulting error was harmless. Unlike *Bailey* and the instant case, where the judge receiving the special offender notice presided over a substantial portion of the defendant's trial, the judge in *Pugh* ruled only on a single discrete motion. The *Pugh* court noted that there, the evidence was clear that the plain view doctrine justified the warrantless search of Pugh's automobile, and that denying Pugh's motion to suppress was "the only correct ruling" the district court could have made.

We have reviewed the portion of the trial commencing on the morning of December 8. If the court had made no rulings, we would affirm. However, a number of rulings against the appellant were made. While we find nothing erroneous in these rulings, and have no reason to believe that they were motivated by prejudice, we cannot say as could the court in *Pugh*, that they were the "only correct ruling(s)." [5]

The special offender statute could not be clearer: in no event shall the district judge be made aware of the special offender notice prior to the return of a verdict. We do not read *Pugh* to permit our court to ignore this explicit statutory proscription, whenever the record fails to reveal that the court made an erroneous ruling after it became aware that notice had been filed. Were such an interpretation accepted, the statutory proscription would be of no effect: premature notification would constitute reversible error only if the judge notified subsequently committed reversible error. Rather, we construe *Pugh* to say that if the district court is inadvertently notified of the government's intention to pursue

special offender sentencing, the resulting error will be deemed harmless only if the court's subsequent rulings are non-discretionary, *i.e.* the *only* correct rulings.

We are sympathetic with Judge Gee's observation in his special concurrence in *United States v. Bailey*, that the special offender statute "is hopelessly quixotic and incoherent in terms of the policies which it ostensibly furthers." However, we are unable, as was Judge Gee, to support a "construction alternative to according 18 U.S.C. § 3575(a) its plain meaning." We must therefore vacate Darwin's sentence under the dangerous special offender statute.

VACATED and REMANDED for re-sentencing.

---

**5.** The district court's basis for concluding that it was in no way prejudiced by the knowledge that a special offender notice had been filed, was that all facts in the notice forming the basis for the government's special offender request were admitted at trial, and that since the notice did not contain any information of which the judge was not already aware, the inadvertent disclosure of the notice was harmless error. While this might be true were the district court to have read the entire notice, the judge indicated that he read only the first four lines, enough to let the court know that special offender sentencing was sought, but not enough to inform him of the reasons therefor. In other words, on the

final day of trial, the judge knew that the government had filed a special offender notice against Darwin, but did not know what Darwin was alleged to have done to warrant enhanced sentencing under the statute: enhancement could have been based on nothing more than what the judge had learned in the course of trial, or any of a variety of other matters of which the trial court was unaware. The court could only speculate as to the grounds the government intended to advance in favor of enhancement, and we are unable to hold that under these circumstances the error was harmless.