**UNITED STATES of America, Appellee,**

v.

**Richard A. SCARBOROUGH, Appellant.**

**No. 84–5123.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 11, 1985.

Decided Nov. 19, 1985.

Robert J. Boylan, Arlington, Va., for appellant.

Robert J. Cynkar, Asst. U.S. Atty. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., on brief), for appellee.

Before WIDENER and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

ERVIN, Circuit Judge:

This case is an appeal from a criminal conviction challenging the defendant's enhanced sentence as a dangerous special offender under 18 U.S.C. § 3575.[1] Scarborough was convicted of possession of a firearm after having been convicted as a felon in violation of 18 U.S.C.App. II § 1202(a). The district court sentenced Scarborough to two years in prison for violating the gun statute and to five additional years as a dangerous special offender. Scarborough now appeals, claiming that the enhancement of the two year sentence was improper. We reverse.

I.

Scarborough was arrested for illegal possession of a firearm in the early morning hours of December 7, 1983. The previous evening, Scarborough's wife had told him she was going shopping with her sister and would be home later that evening. When she didn't return, Scarborough phoned a friend's house to inquire as to his wife's whereabouts. He was told that she was at the friend's house and was in bed with

---

1. 18 U.S.C. § 3575 has been repealed, effective November 1, 1986.

another man. Scarborough then proceeded from his parents' home to the house, taking with him a gun that belonged to his father. When he arrived at the friend's house, he found his wife asleep in bed with a man. A scuffle ensued between Scarborough and the man. The gun was fired during the altercation without hitting anyone.

A psychiatrist who examined Scarborough after the incident stated that

[i]t is obvious that on the morning of December 7, [Scarborough] was quite rageful; but even under the circumstances of breaking down doors and being in a highly emotional state, he did not physically hurt anyone. I believe that the event of that morning might be looked upon as a special situation due to the highly emotional circumstances. Based on my two interviews with Mr. Scarborough, I would say that there was nothing to indicate that he posed a continued danger to society. He seemed quite earnest in his deep feelings towards his family, and also seemed to be aware of the serious nature of his actions.

(J.A. 213). Scarborough was convicted in Virginia state court for breaking and entering with intent to commit assault and brandishing a firearm in connection with the incident. The possible maximum penalty for the offenses was six years. The jury recommended that he serve only one year.

On February 6, 1984, a federal grand jury indicted Scarborough for possession of a firearm after having been convicted of a felony in violation of 18 U.S.C.App. II § 1202(a). On March 9, 1984, the government filed a Petition for Dangerous Special Offender sentencing pursuant to 18 U.S.C. § 3575, requesting that Scarborough receive an enhanced sentence under the statute because a period of confinement longer than the two-year maximum for possession of a firearm was "required to protect the public from further criminal conduct by Scarborough." (J.A. 11). Scarborough

was convicted of the firearms charge following a March 13, 1984 jury trial.

On April 13, 1984, the district court conducted an evidentiary hearing concerning the propriety of Dangerous Special Offender sentencing. In order to be eligible for enhanced sentencing under the relevant subsection of the statute, a defendant must have been convicted of a felony punishable by death or imprisonment for more than one year, or have been released from prison on such a felony conviction within the previous five years. 18 U.S.C. § 3575(e)(1).[2] Scarborough attempted to present evidence at the hearing that his only felony conviction within the previous five years was invalid, and consequently he did not qualify as a special offender under 18 U.S.C. § 3575. He sought to argue that the 1982 conviction was invalid due to illegally obtained evidence and insufficiency of the evidence. The district court refused to entertain any evidence regarding the validity of the conviction, stating that it was "not going to turn this into a habeas corpus proceeding." (J.A. 52). The court believed that it was sufficient that the conviction was facially valid, and that a challenge to the legality of the search and the sufficiency of the evidence could only properly be brought in a habeas corpus proceeding.

The district court then found that, on the basis of his prior convictions, Scarborough should receive an enhanced sentence under the statute. Prior to his arrest for the instant offense in December of 1983, Scarborough had been convicted of felonies arising from five different incidents. Within ten years prior to the arrest, he was arrested and convicted twice for possession of a controlled substance. On July 2, 1982, he was arrested for possession of less than one tenth of a gram of cocaine. He received a three-year suspended sentence and was placed on three years probation. On July 7, 1979, Scarborough was convicted of possession of phenobarbital. He was fined $1000.[3] In 1972 and 1973, Scarborough

---

**2.** The text of § 3575(e)(1) is set forth *infra* at 180.

**3.** The district court did not rely on this conviction in finding that Scarborough was eligible for special offender sentencing due to uncertainty

was convicted of five felonies arising from three more serious incidents. On September 8, 1972, he was convicted in Virginia state court for possession of PCP with intent to distribute and possession of hashish.[4] He received a one year suspended sentence and one year's probation for the former offense and a concurrent six year suspended sentence and six year's probation for the latter. Scarborough's probation was revoked when he was arrested the following year. On November 16, 1973, Scarborough was convicted in Virginia state court on two counts of possession of LSD with intent to distribute. These offenses were committed on July 16 and August 1, 1973. Scarborough was sentenced to five years in prison, with three years suspended, for the July 16 offense, and five years in prison for the August 1 offense. These sentences were to run concurrently with each other and concurrently with time served for the 1972 convictions, as those sentences were no longer suspended. On November 30, 1973, Scarborough was also convicted of the federal offense of possession of a firearm by a convicted felon, 18 U.S.C.App. II § 1202(a), on the basis of the incident resulting in his conviction for the August 1 drug offense. He was sentenced to one year in prison. Scarborough was released from federal prison for this offense on April 25, 1978 and had not been incarcerated since that time until his arrest for the events of December 7, 1983.

The district court found that, due to the 1982 conviction for possession of cocaine and his previous record, Scarborough was eligible for special offender sentencing if he was "dangerous" within the meaning of the statute. See 18 U.S.C. § 3575(f). The evidence offered by the government regarding Scarborough's alleged dangerousness consisted of evidence of the above-mentioned prior crimes and the testimony of three witnesses. The first witness, a former Fairfax County Police Officer, testified regarding Scarborough's association with a motorcycle gang fifteen years before. The officer had not had any contact with Scarborough in fourteen years.[5] The second witness, also a former Fairfax County Police Officer, participated in the investigations of Scarborough which resulted in his 1971 and 1973 arrests for the above-mentioned crimes. This witness had moved away from Fairfax County in 1978 and consequently had had no contact with Scarborough since that time. The third witness, an active Special Agent for the Federal Bureau of Alcohol, Tobacco and Firearms, first had contact with Scarborough regarding his 1973 firearms conviction. Between 1973 and 1980 the agent periodically investigated Scarborough, however the investigations never resulted in an arrest or in criminal charges. The three witnesses testified that, in their opinions, Scarborough was likely to continue to be involved in criminal activity. The special agent testified that he had "seen no indication or effort on [Scarborough's] part to change." (J.A. 82).

The evidence presented by Scarborough at the hearing consisted of a report by a psychiatrist who examined Scarborough after his arrest, and testimony by William Beavers, Scarborough's drug rehabilitation counselor, Jonathan Shapiro, an attorney who had previously represented Scarborough, and Scarborough's wife. In the psychiatrist's opinion, Scarborough's actions on December 7, 1983 were an isolated response to a highly emotional incident. He believed that there was "nothing to indicate that [Scarborough] posed a continued danger to society." (J.A. 213). Shapiro testified that he had known Scarborough over a period of eight to ten years and had

as to whether the crime was a felony or a misdemeanor.

4. These offenses were committed on July 30, 1971.

5. The former officer's testimony consisted primarily of his recollections of an informant's description and interpretation of a photograph in which Scarborough allegedly appeared. The witness had neither seen the photograph nor reviewed the informant's statement in fifteen years. The district court permitted this testimony, over the defendant's objections, presumably on the basis that the rules of evidence do not strictly apply in a sentencing hearing.

most recently represented him within the previous two years. He described Scarborough as "polite and someone who I would describe as a gentle person." (J.A. 95).

Beavers first met Scarborough when he was referred to the Crossroads drug rehabilitation program by the Virginia state court following his 1982 conviction for possession of cocaine. He saw Scarborough at least twice a week from August 1982 to June 1983 when Scarborough successfully completed the program.[6] According to Beavers, Scarborough played a leadership role among participants in the program. He would use himself as an example to encourage other group members to change their ways. In particular, he volunteered to talk with adolescents, telling Beavers "I've got kids of my own and I don't want them to come up the way I did." (J.A. 103). Beavers testified that he never saw Scarborough act in a violent way toward any person. Instead, Scarborough had broken up fights and mediated in altercations between others. (J.A. 103–04). In Beavers' view, Scarborough had made "a 180-degree change" in his life. (J.A. 101). He believed that although Scarborough had done some dangerous things to himself in the past, that "that has been rectified and he is definitely not, I would stake my nine years of experience in this business on Mr. Scarborough, that he is not a danger to anyone." (J.A. 105).

The district court found that the testimony regarding Scarborough's prior association with a motorcycle gang was "very minimally probative of his current dangerousness," and concluded from the evidence that he had not been associated with the gang for twelve or thirteen years. (J.A. 141). However, the court found that Scarborough "has been persistently associated with narcotics as revealed by his convictions." (J.A. 141). Further,

Apparently the mild sentences he has received to date have not acted as a deterrent. It is apparent to the Court

that he insist [sic] on living his lifestyle without regard to any legal restrictions and that's no more better exemplified than this, his second conviction for possession of a firearm after being a convicted felon.

. . . . . .

The public does need protection from this defendant. Trafficking, possessing with intent to distribute, and ownership of a firearm by persons who have been convicted endanger the public and there's no question that a longer period of confinement is necessary than the two years that is permitted for the March 13, 1984, conviction, in order to protect the public.

This defendant may be a gentle person, but gentleness doesn't stop him from doing those things which endanger the public.

(J.A.142).

Accordingly, the court found Scarborough to be a dangerous special offender under 18 U.S.C. § 3575, and sentenced him to an additional five years in prison in addition to the two year maximum sentence on the firearms charge.

Scarborough now appeals, challenging the enhancement of the sentence. He claims that the district court erred in finding (1) that he was a special offender and (2) that he was dangerous under the meaning of 18 U.S.C. § 3575. He further argues that the dangerous special offender statute is unconstitutional on its face and as applied because it fails to provide defendants with adequate notice.

II.

The standard of appellate review of sentences under the dangerous special offender statute is much greater than that normally provided on appeal from sentencing decisions. *United States v. Felder,* 706 F.2d 135, 137–38 (3rd Cir.1983). 18 U.S.C. § 3576 permits appeals from sentencing de-

---

**6.** According to Beavers, only 55% of first-time Crossroads participants successfully complete

the program. (J.A. 99).

cisions by either the defendant or the government. Under the statute,

> Review of the sentence shall include review of whether the procedure employed was lawful, the findings made were clearly erroneous, or the sentencing court's discretion was abused. The court of appeals on review of the sentence may, after considering the record, including the entire presentence report, information submitted during the trial of such felony and the sentencing hearing, and the findings and reasons of the sentencing court, affirm the sentence, impose or direct the imposition of any sentence which the sentencing court could originally have imposed, or remand for further sentencing proceedings and imposition of sentence, except that a sentence may be made more severe only on review of the sentence taken by the United States and after hearing.

18 U.S.C. § 3576.

One of the motivating factors underlying Congress' enactment of this section of the statute was the desire to limit the discretion of sentencing judges. *See* S.Rep. No. 91–617, 91st Cong., 1st Sess. 84–87 (1969) (hereinafter cited as "S.Rep. No. 91–617"). According to the Senate Report, the

> haphazard development of excessive, inadequate, and wholly discretionary sentencing has been dismal. Individual defendants have had imposed upon them palpably excessive or insufficient or inconsistent sentences, doing injustice sometimes to defendants and sometimes to society.

*Id.* at 85. The harm to defendants from such sentencing disparity was considered by the Sixth Circuit in *Shepard v. United States,* 257 F.2d 293, 294 (6th Cir.1958), quoted with approval in the Senate Report. According to the court,

> Justice is measured in many ways, but to a convicted criminal its surest measure lies in the fairness of the sentence he receives.... It is an anomaly that a judicial system which has developed so scrupulous a concern for the protection of a criminal defendant throughout every

other stage of the proceedings against him should have so neglected this important dimension of fundamental justice.

257 F.2d at 294; S.Rep. No. 91–617 at 86. *See also United States v. DiFrancesco,* 449 U.S. 117, 142–43, 101 S.Ct. 426, 440–41, 66 L.Ed.2d 328 (1980). In recognition of this problem, § 3576 was designed in part to grant appellate courts the power to modify or vacate sentences that are based upon erroneous findings or are otherwise unnecessary and unfair. *See United States v. McCoy,* 767 F.2d 395, 401–02 (7th Cir.1985) (vacating and remanding sentencing decision based upon insufficient findings); *United States v. Calabrese,* 755 F.2d 302, 305–06 (2d Cir.1985) (vacating enhancement of sentence where less than the maximum sentences were imposed on underlying offenses); *Felder,* 706 F.2d at 140–41 (vacating sentence and remanding for consideration of whether twelve-year enhancement was disproportionately severe).

### III.

■ To be eligible for an enhanced sentence under 18 U.S.C. § 3575, a defendant must be a special offender and must be dangerous. *See United States v. Ilacqua,* 562 F.2d 399, 403 (6th Cir.1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978) (the finding that a defendant is a special offender and the finding that he is dangerous involve two separate inquiries). Scarborough argues that the district court erred in finding that he was a special offender under § 3575(e)(1) because he had not been imprisoned within five years of his arrest for possession of a firearm. Section 3575(e)(1) provides that a defendant convicted of a felony is a special offender if

> the defendant has previously been convicted ... for two or more offenses committed on occasions different from one another and from such felony and punishable in such courts by death or imprisonment in excess of one year, for one or more of such convictions the defendant has been imprisoned prior to the commission of such felony and less than five years have elapsed between the commis-

sion of such felony and either the defendant's release, on parole or otherwise, from imprisonment for one such conviction or his commission of the last such previous offense or another offense punishable by death or imprisonment in excess of one year....

18 U.S.C. § 3575(e)(1).

### A.

In determining that Scarborough was a special offender, the district court found that Scarborough had been convicted of at least five previous felonies. Four of the offenses were committed in 1973 or before. The fifth was committed on October 2, 1981, and Scarborough was convicted on July 2, 1982. The court therefore found that, as required by the statute, at least one of the prior felonies was committed within five years of the instant offense, and that Scarborough had been imprisoned on at least one occasion for a prior felony. The district court believed that the statute did not require that Scarborough have been imprisoned within five years of the instant offense in order to be a special offender, and he did not find that Scarborough had been. (J.A. 139–140).

Scarborough argues that, under *United States v. Williamson*, 567 F.2d 610 (4th Cir.1977), a defendant must have been released from prison within five years in order to qualify as a special offender. However, the language in *Williamson* upon which Scarborough relies is merely a reflection of the fact that *Williamson* involved a situation in which a release from prison within five years, not the commission of an offense, qualified that defendant to be a special offender. Fact situations like that in *Williamson* and in this case are both clearly contemplated by the language of the statute. *See* H.R.Rep. No. 91–1549, 91st Cong., 2d Sess. (1970) (hereinafter cited as "H.R.Rep. No. 91–1549"); *reprinted in* 1970 U.S.Code Cong. & Ad.News 4007, 4038. Accordingly, the district court did not err in finding Scarborough to be a special offender.

### B.

The district court relied on Scarborough's 1982 cocaine conviction as the conviction within five years required by the statute. 18 U.S.C. § 3575(e)(1). Scarborough attempted to present evidence to show that the 1982 conviction was invalid due to an unlawful search. The district court refused to consider the evidence. In the district court's view, if the conviction was facially valid it could be considered in making a determination regarding a defendant's eligibility for special offender sentencing.

18 U.S.C. § 3575(e) provides that "[a] conviction shown on direct or collateral review or at the hearing to be invalid ... shall be disregarded" for the purpose of determining whether a defendant is a special offender under § 3575(e)(1). Scarborough sought, but did not receive, review of the 1982 conviction on direct appeal. He did not seek collateral relief because he could not afford an attorney and he was not imprisoned for the conviction. Scarborough claims that because the validity of the prior conviction has never been reviewed, the district court's failure to consider evidence regarding the validity of the conviction at the special offender hearing was improper.

■ The question of the appropriate scope of review of the validity of a prior conviction during a special offender hearing is a question of first impression. Neither the language of the statute itself nor the legislative history provide any guidelines. *See* H.R.Rep. No. 91–1549; *reprinted in* 1970 U.S.Code Cong. & Ad.News at 4038. In this case, even minimal review of the validity of the 1982 conviction was not provided.

■ The dangerous special offender statute clearly contemplates some sort of review of the validity of a prior conviction. The language explicitly states that "[a] conviction shown ... *at the hearing* to be invalid ... shall be disregarded." 18 U.S.C. § 3575(e). (emphasis added). Because review of the validity of a conviction

"at the hearing" is contemplated by the statute, we hold that the district court erred in refusing to consider Scarborough's arguments that his 1982 conviction was invalid.[7] The district court's error is harmless, however, as the evidence offered by Scarborough reveals that this collateral challenge to his 1982 conviction cannot succeed.

## C.

Scarborough's 1982 conviction arose from an incident that took place in Fairfax County, Virginia on October 21, 1981. That evening Fairfax County police received a call from an Alexandria, Virginia resident indicating that a suspicious person was in the caller's neighborhood. Two officers proceeded to the neighborhood, and at approximately 8:00 p.m., approached Scarborough, who was in the vicinity. The officers asked Scarborough what he was doing in the area. Scarborough replied that he had been visiting a resident. According to Officer E.M. McDaniel, Scarborough appeared very nervous. McDaniel observed something shaped like a film cannister in Scarborough's pocket, and asked him to produce it, which he did. Scarborough then placed his hands in his pockets. Although, as McDaniel later testified, he had no reason to believe that Scarborough was armed, McDaniel told Scarborough that he was going to search him. Scarborough then removed his hands from his pockets. McDaniel testified that, in doing so, Scarborough made a throwing motion. McDaniel then heard something hit the ground. In a search of the area ten to fifteen feet from where Scarborough had been standing, the officers found a glass vial containing a small amount of cocaine.[8] (J.A. 154A–170). The vial was admitted into evidence over Scarborough's objection at his 1982 trial for possession of cocaine. (J.A. 205–09).

Scarborough argues that his 1982 conviction is invalid because the vial of cocaine should have been excluded from evidence as the fruit of an illegal search. He argues that the search was improper because the officers did not have cause to believe that Scarborough was armed. *See Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968).

Scarborough's collateral challenge to the admission of the allegedly illegally obtained evidence is barred by *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In that case the Supreme Court held that "where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494, 96 S.Ct. at 3052. The rationale for the Court's ruling was that, in the context of a federal habeas corpus challenge to a state court conviction, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal and the substantial societal costs of the application of the rule persist with special force." *Id.* at 494–95, 96 S.Ct. at 3052–53.

In *Doleman v. Muncy*, 579 F.2d 1258 (4th Cir.1978), this court held that *Stone's* requirement of "an opportunity for full and fair litigation of a Fourth Amendment claim," 428 U.S. at 494, 96 S.Ct. at 3052, is met when state procedures provide a meaningful vehicle for a prisoner to raise a fourth amendment claim. In *Doleman*, the requirement was met because the prisoner had an opportunity to present his fourth

---

**7.** The statute's requirement of review "at the hearing" may be in recognition of the fact that there will be times when a colorable constitutional question has not been reviewed, perhaps because the defendant received a minimal sentence, and consequently the defendant or his overburdened public defender saw nothing to gain by pursing an appeal or collateral relief. In such a situation, the arguably infirm conviction is only of consequence to the defendant when it is later used to establish special offender status. At least in these circumstances, collateral review of the validity of the conviction at the special offender hearing is required.

**8.** The search of Scarborough's person revealed no weapons. (J.A. 165).

amendment claim through a motion to suppress at his state criminal trial, and through an assignment of error on appeal once the motion was denied. 579 F.2d at 1265.

■ *Stone's* limitation on review of fourth amendment claims in the context of federal habeas corpus actions applies with equal force in a collateral attack on a state conviction at a dangerous special offender hearing. The deterrent effect of the exclusionary rule on police misconduct has no greater force when the rule is applied in the context of a special offender hearing than in a federal habeas corpus action. Accordingly, under *Stone,* if an opportunity to fully and fairly litigate fourth amendment claims was provided by the state, a defendant in a special offender hearing may not invoke the exclusionary rule in a challenge to a previous conviction. Because Scarborough was provided such an opportunity through his motion to suppress and subsequent assignment of error, *see Doleman,* 579 F.2d at 1265, his fourth amendment arguments may not be considered by this court.[9]

Scarborough's 1982 conviction was therefore properly considered by the district court as one of the factors establishing Scarborough's eligibility for special offender sentencing. Because Scarborough had a valid felony conviction within the previous five years and because he had at least one additional prior felony conviction and had been imprisoned at least once in the past for a felony, the district court's finding

that Scarborough was a special offender within the meaning of 18 U.S.C. § 3575(e)(1) was not in error.

### IV.

■ Once the district court determined that Scarborough was a special offender, it turned to the question of whether he was "dangerous" under the meaning of the statute. 18 U.S.C. § 3575(f) provides that "[a] defendant is dangerous for purposes of this section if a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant."[10] While recidivism alone will trigger the finding that a defendant is a special offender, something more than recidivism is required before a finding of dangerousness and enhanced sentencing will be proper. *See* S.Rep. No. 91–617 at 88. In certain circumstances, the evidence of prior crimes itself will be sufficient to find that a defendant is dangerous due to the frequency of the crimes and their character. *See e.g., United States v. Cox,* 719 F.2d 285, 288 (8th Cir.1983), *cert. denied* 464 U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186 (1984) (prior crimes included kidnapping, assault and robbery); *United States v. Davis,* 710 F.2d 104, 109 (3rd Cir.), *cert. denied* 464 U.S. 1001, 104 S.Ct. 505, 78 L.Ed.2d 695 (1983) (history of 28 arrests and 11 convictions including "atrocious assault and battery" and murder); *United States v. Jarrett,* 705 F.2d 198, 209 (7th Cir.1983), *cert. denied,* 465 U.S. 1004, 104

---

9. Scarborough also argues that his 1982 conviction is invalid due to insufficiency of the evidence. "It is well-established that a jury verdict must be affirmed if there is sufficient evidence, viewed in the light most favorable to the government, from which a rational jury could have found guilt beyond a reasonable doubt." *United States v. Automated Medical Laboratories, Inc.,* 770 F.2d 399, 407 (4th Cir.1985). *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). From a review of the record in this case, it is clear that a rational jury could have found Scarborough guilty beyond a reasonable doubt of possession of cocaine.

10. Courts have upheld the definition of dangerousness under § 3575(f) as not unconstitutional-

ly vague on the basis that dangerousness is a concept familiar to judges involved in sentencing decisions. *United States v. Cox,* 719 F.2d 285, 286 (8th Cir.1983), *cert. denied,* 464 U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186 (1984); *Williamson,* 567 F.2d at 613; *United States v. Neary,* 552 F.2d 1184, 1194 (7th Cir.), *cert. denied,* 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139 (1977); *United States v. Bowdach,* 561 F.2d 1160, 1175 (5th Cir.1977); *United States v. Stewart,* 531 F.2d 326, 336–37 (6th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 376 (1976); *but see United States v. Duardi,* 384 F.Supp. 874, 885–86 (W.D.Mo.1974), *aff'd on other grounds,* 529 F.2d 123 (8th Cir.1975).

S.Ct. 995, 79 L.Ed.2d 228 (1984) (defendant a "professional criminal all of his adult life" with 58 arrests and 13 convictions as an adult, two arrests and convictions as a juvenile); *United States v. Schell,* 692 F.2d 672, 674 (10th Cir.1982) (prior crimes included bank robbery, armed robbery, aggravated robbery and murder); *Williamson,* 567 F.2d at 616 (dangerous special offender's criminal acts included "several acts of violence including the 'totally unnecessary vicious action' of shooting in the head a man whom defendant had beaten into a state of helplessness"). However, when the prior crimes and the pattern of criminal behavior do not by themselves establish that the defendant poses a danger to society through continued, dangerous criminal behavior, a finding of dangerousness will only be proper when dangerousness is established through other evidence presented at the hearing, taken together with the defendant's prior record. *See United States v. Warme,* 572 F.2d 57, 62 (2d Cir.), *cert. denied,* 435 U.S. 1101, 98 S.Ct. 1885, 56 L.Ed.2d 393 (1978) ("[a] defendant is not to be deemed 'dangerous' simply because multiple convictions make him a 'special offender' under § 3575(e)(1)").

In this case, the district court found testimony regarding Scarborough's previous involvement with a motorcycle gang to be "very minimally probative of his current dangerousness." (J.A. 141). The court found as a fact that he had not been involved with the gang in thirteen years. (J.A. 141). The court relied solely upon Scarborough's previous convictions as evidence that he was dangerous, stating that

> [t]rafficking, possessing with intent to distribute, and ownership of a firearm by persons who have been convicted endanger the public and there's no question that a longer period of confinement is necessary than the two years that is permitted for the March 13, 1984, conviction, in order to protect the public.

(J.A. 142).

Scarborough's convictions for drug trafficking and possession with intent to distribute were over ten years old at the time of the dangerous special offender hearing. There was no evidence in the record which the district court found to be probative which implicated Scarborough in any more recent drug trafficking activities. Consequently, the record suggests that after his 1973 arrests and his imprisonment, Scarborough ceased his involvement in such activity. Scarborough's 1979 and 1982 arrests for possession of narcotics indicate that he continued to have a problem with personal drug use. However, since that time Scarborough has been a model participant in a drug rehabilitation program. Far from being a danger to society, Scarborough has been an asset through his efforts to counsel adolescents to kick their drug habits. There is no evidence in the record that Scarborough has used drugs since his successful completion of the program. Consequently, the record shows that at the time of his 1983 arrest Scarborough had taken serious and fairly successful steps to change his prior behavior.

Notwithstanding his improving record, Scarborough was involved in an assault in 1983, and did unlawfully possess a firearm during the incident. However, a psychiatric expert gave an opinion that the incident should be viewed as an isolated response to a highly emotional situation. He stated that Scarborough was remorseful and understood the severity of his actions. The government did not in any way impeach the expert's opinion. The opinion is corroborated by the circumstances of the crime and the fact that the state jury was only willing to recommend that Scarborough receive one-sixth of the permissible penalty for the assault. Under these circumstances, the record simply does not support an assumption that Scarborough is likely to continue to engage in the type of behavior he exhibited on December 7, 1983.

 In light of the foregoing facts, the record in this case does not support the district court's finding that Scarborough is likely to continue to engage in dangerous criminal behavior in the future. *Cf. United States v. Moccia,* 681 F.2d 61, 65–66 (1st

Cir.1982) (defendant properly found to be a special and dangerous drug offender under 21 U.S.C. § 849 based upon findings that he was a professional criminal involved in a continuing pattern of drug trafficking and that drug sales constituted a substantial source of his income, including several hundred thousand dollars profit in one year). Rather it suggests that Scarborough has substantially changed his behavior, yet suffered a setback to his efforts at self-improvement during an unfortunate personal crisis. To place such a defendant within the scope of the "dangerousness" requirement in § 3575(f) would make the special offender statute a simple recidivist statute subject to invocation whenever a defendant has a prior record. This was clearly not the intent of Congress in enacting the law. *See* S.Rep. No. 91–617 at 88. Absent probative evidence that a defendant is likely to engage in dangerous criminal behavior in the future, a finding of dangerousness will not be proper. *McCoy,* 767 F.2d at 401–02. Because there is no such evidence in this case, we find that Scarborough is not dangerous within the meaning of 18 U.S.C. § 3575(f), and that an enhanced sentence in this case is inappropriate.[11]

Accordingly, the judgment of the district court finding Scarborough to be a dangerous special offender is

REVERSED.

WIDENER, Circuit Judge, concurring and dissenting:

I concur in all of the opinion of the majority except part IV thereof, and to that part I respectfully dissent. I would affirm.

I think the findings of fact of the district court were not clearly erroneous and should be upheld. 18 U.S.C. § 3576.

I also think that the district court did not abuse its discretion in finding Scarborough to be a dangerous special offender. 18 U.S.C. § 3576.

The only difference of any consequence in the conclusion drawn by the district court and in the conclusion drawn by the majority is that the majority concludes that Scarborough's participation in the drug rehabilitation program was sufficient to counterbalance his other activities and the other evidence of his criminal proclivity, while the district court concluded to the contrary.

While I acknowledge that the district court would have been justified in finding that Scarborough was not a dangerous special offender on that account, I think its finding that Scarborough was such an offender was also within its discretion and based upon findings of fact by that court which were not clearly erroneous.

---

11. Due to our disposition of this issue, we need not reach the question of whether notice given to Scarborough was sufficient to meet the requirements of due process.