**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Benton D. BURT, Defendant-Appellee.**

**No. 84–1341.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 13, 1986.
Decided Oct. 10, 1986.

Charles B. Burch, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellant.

Ephraim Margolin, San Francisco, Cal., for defendant-appellee.

Before SNEED, FARRIS and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

Defendant Benton Burt was convicted of violating 18 U.S.C. § 922(h)(1), receipt of a firearm by a convicted felon. The government appeals the district court's refusal to sentence the defendant as a dangerous special offender ("DSO"). The issue before us is whether the district court, for purposes of the DSO statute, properly disregarded a prior conviction obtained by a procedure later found unconstitutional, but held not retroactive. We hold that it did, and affirm.

### I.

On January 12, 1983, the government charged the defendant with firearms violations by a convicted felon. In February 1983, the government filed an application requesting that, if convicted, the defendant be sentenced as a dangerous special offender. The application alleged that the defendant was dangerous as defined by the statute and that he was a special offender because he had been convicted of second degree murder in 1973 and assault with a deadly weapon in 1962. After a jury returned a guilty verdict, the district court held a hearing on the government's DSO application.

After the hearing, the court refused to include the 1962 conviction for the purpose of qualifying the defendant as a special offender. The court found that, during the 1962 trial, the prosecutor, and the trial judge through jury instructions, commented on the defendant's refusal to testify. The defense attorney in the 1962 case made a tactical decision not to put Burt on the witness stand because he had a prior juvenile offense that could be used to impeach him and because he spoke in short, clipped sentences. At closing argument, the district attorney urged the jurors to treat the defendant's silence as evidence of his guilt. The judge instructed the jury:

> As to any evidence or facts against [the defendant] which [he] can reasonably be expected to deny or explain because facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may reasonably be drawn therefrom those unfavorable to the defendant are the more probable.

The jury initially found itself deadlocked and requested additional instruction on the defendant's failure to testify. Only after the judge repeated the instruction and explained its meaning did the jury convict Burt.

Although the United States Constitution and California law permitted this practice at the time, the United States Supreme Court later held that such conduct violated a defendant's Fifth Amendment rights. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The Supreme Court, in *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), however, declared that *Griffin* was not retroactive.

The district court recognized the 1962 conviction could not be overturned, but held that the conviction was invalid for the purposes of sentence enhancement:

The defendant has served a term of incarceration for the crime for which he was convicted in 1962. The instruction twice given at his trial and the comments made by the judge and prosecutor would not be permitted today under prevailing constitutional principles. Indeed, judicial or prosecutorial comment on the defendant's silence in a criminal trial is so anathematic to the idea of a fair trial in our current constitutional thinking that today one is somewhat shocked that such comment was ever considered appropriate.... Twenty-two years have passed since the 1962 conviction; next year marks the twentieth anniversary of the *Griffin* decision. It would in this Court's opinion be improper to add additional years to a sentence of imprisonment on the basis of a twenty-two year old conviction which, although clearly constitutional, is nonetheless tainted and defective in light of our present constitutional mores.

Thus, because the government failed to demonstrate that the defendant had two felony convictions the court denied the application. The court then sentenced the defendant to a five-year imprisonment term. The government appeals the court's DSO ruling.[1]

## II.

The dangerous special offender provisions, 18 U.S.C. §§ 3575–3576, of the Organized Crime Control Act of 1970, permit a district court to impose an enhanced sentence of up to twenty-five years imprisonment for certain offenders.[2] To impose an enhanced sentence, a court must determine that the defendant qualifies both as a dangerous offender, *id.* § 3575(f),[3] and as a special offender, *id.* § 3575(e)(1)–(3).

Congress intended the DSO statute to apply to three narrow categories of offenders who pose a danger to society: "habitual criminals," "professional offenders," and "organized crime offenders." H.R.Rep. No. 1549, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad.News 4007, 4038. The statute provides that the government must prove by a preponderance of the evidence that a defendant falls within one of the special offender classifications: section 3575(e)(1) provides that a defendant may qualify as a special offender based on the number and frequency of prior felony convictions; sections 3575(e)(2) and 3575(e)(3) provide that certain "professional" or "organized crime" activities qualify a defendant for the sentence enhancement.

Under section 3575(e)(1), the habitual offender provision on which the government based its DSO application, the government must prove that (1) the defendant previously was convicted of two or more felonies; (2) the defendant was imprisoned; and (3) the defendant's release from prison, or commission of a felony, was within the five-year period immediately preceding the commission of the latest offense. The statute limits the types of convictions that may be used under this provision:

A conviction shown on direct or collateral review or at the [Dangerous Special Offender] hearing to be invalid or for which the defendant has been pardoned on the ground of innocence shall be disregarded for the purposes of paragraph (1) of this subsection.

18 U.S.C. § 3575(e).

Congress included the separate hearing provision in the statute to give the defend-

---

1. The defendant appealed the conviction and we affirmed in a memorandum disposition filed with this opinion. *United States v. Burt,* No. 84–1324 (9th Cir. Oct. 10, 1986) (mem.).

2. Congress repealed this statute in 1984, effective November 1, 1986. Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 98 Stat. 1987.

3. "A defendant is dangerous for purposes of this section if a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant." 18 U.S.C. § 3575(f). The defendant does not contest the district court's finding that he was a dangerous offender.

ant an opportunity to question the validity of any conviction used for sentence enhancement. *See United States v. Scarborough,* 777 F.2d 175, 181 (4th Cir.1985). The Senate Judiciary Committee stated that " 'fairness demands a hearing focused on the precise question of the existence of the grounds for' " a dangerous special offender sentence. S.Rep. No. 617, 91st Cong., 1st Sess. 92 (1969) (quoting Model Penal Code § 7.08, comment at 55 (Tent. Draft No. 2, May 3, 1954)). Therefore, a district court must consider a defendant's challenge to a conviction used to support a special offender application. *Scarborough,* 777 F.2d at 182 (district court erred by refusing to consider defendant's claim that conviction was invalid).[4]

However, the Act does not define what criteria a sentencing court should employ to determine whether a conviction is "invalid." Furthermore, the legislative history provides only partial guidance. The House report accompanying the bill simply repeats the statutory language of section 3575(e). H.R.Rep. No. 1549, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad.News 4007, 4038. The Senate Report reference to the provision is as follows: "Invalid convictions are not regarded. See

*Burgett v. Texas,* 389 U.S. 109, 115 [88 S.Ct. 258, 262, 19 L.Ed.2d 319] (1967)." S.Rep. No. 617, 91st Cong., 1st Sess. 164 (1969). Before we determine what constitutes an invalid conviction, we must first discuss what standard governs our review of the district court's decision.

### III.

■ In general, appellate review of dangerous special offender sentencing decisions is broader than review of usual sentencing. *See, e.g., United States v. Soto,* 779 F.2d 558, 562 (9th Cir.), *modified,* 793 F.2d 217 (9th Cir.1986); 18 U.S.C. § 3576.[5] The statute permits an appellate court "to modify or vacate sentences that are based upon erroneous findings or are otherwise unnecessary and unfair." *Scarborough,* 777 F.2d at 180. However, the statute does not specify the standard for reviewing decisions concerning the validity of prior convictions.

■ If we are simply reviewing the district court's interpretation of the statute, we would use the de novo standard. *See United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46

---

**4.** The hearing provision enacted originated from the testimony of the Association of the Bar of the City of New York before the House Judiciary Committee. *See Organized Crime Control: Hearings on S. 30, and Related Proposals Before Subcomm. No. 5 of the House Comm. on the Judiciary,* 91st Cong., 2d Sess. 291 (1970). The Association recommended that the proposed legislation be amended to include such a hearing provision:

> The term "conviction" should also be more carefully defined to eliminate individual situations which Title X should not reach. It should be made clear, for instance, that convictions overturned on collateral attack as well as direct appeal are discounted. The defendant should also be permitted to question the validity of any prior convictions at his sentencing hearing.

*Id.* at 336 n. 81.

Senator McClellan, the architect of S. 30, quoted this language during the debate on the legislation in the Senate and stated that "title X already contains provisions which do everything requested ... by the city bar committee." 116 Cong.Rec. S8683 (daily ed. June 9, 1970). Sena-

tor McClellan referred to the original Senate version, which read: "A conviction shown to be invalid or for which the defendant has been pardoned on the ground of innocence shall be disregarded...." The House Judiciary Committee's version, the one enacted, clarified the provision by incorporating the Association's suggestions. *See* 18 U.S.C. § 3575(e).

**5.** 18 U.S.C. § 3576 provides the following guidance for courts reviewing DSO appeals:

> Review of the sentence shall include review of whether the procedure employed was lawful, the findings made were clearly erroneous, or the sentencing court's discretion was abused. The court of appeals on review of the sentence may, after considering the record, ... impose or direct the imposition of any sentence which the sentencing court could originally have imposed, or remand for further sentencing proceedings and imposition of sentence, except that a sentence may be made more severe only on review of the sentence taken by the United States and after hearing.... The court of appeals shall state in writing the reasons for its disposition of the review of the sentence.

(1984). Our review of the legislative history and statutory scheme satisfies us that Congress did not intend for appellate courts to have that broad a power of review for validity determinations. Rather, Congress intended the sentencing court in each case to have primary responsibility for determining whether a conviction is "invalid" for the purposes of the Act.

We first note that Congress did not impose rigid rules on a district court's determination of what constitutes an invalid conviction. *See* S.Rep. No. 617, 91st Cong., 1st Sess. 90 (1969) ("The procedures established ... for sentencing special offenders, therefore, have been designed to protect the defendant's and the Government's interests ..., but to guard against the unnecessary formalization of sentencing procedures."). Congress provided no explicit guidance for making such a determination, except its reference to *Burgett*. Given the comprehensiveness and detail of the statute's other provisions, the absence of a definition of "invalid conviction" implies that Congress intended the sentencing judge to determine whether a "conviction [has been] shown ... at the hearing to be invalid." 18 U.S.C. § 3575(e).

Second, despite the unique appellate review procedures, the DSO statute vests substantial discretion in the sentencing court in determining whether the offender is a dangerous special offender. *See, e.g.,* 116 Cong.Rec. S8679 (daily ed. June 9, 1970) (statement of Sen. McClellan) ("[T]itle X preserves the existing right of a sentencing judge to discount information he considers to be of imperfect reliability.").[6] For example, whether a defendant is a dangerous offender involves matters "traditionally left to [the] wide discretion of a sentencing court." *United States v. Neary,* 552 F.2d 1184, 1193 (7th Cir.), *cert. denied,* 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139 (1977).

Moreover, the appellate review provisions, although generally providing for greater review of dangerous special offender sentencing than regular sentencing, suggest deference to the district court's determination of a conviction's validity. The appellate review provision states that "[r]eview of the sentence shall include review of whether the procedure employed was lawful, the findings made were clearly erroneous, or the sentencing court's discretion was abused." 18 U.S.C. § 3576. Although a district court's determinations are not "findings of fact," we believe that Congress intended for appellate courts to give some deference to district courts' determinations on conviction validity. *Cf. Neary,* 552 F.2d at 1193 (suggesting that a district court's finding that a defendant is a special offender involves "historical facts;" thus implying clearly erroneous standard). However, because we agree with the district court that the 1962 conviction should not be used to enhance the defendant's sentence by any standard of review, we decline to establish the precise standard for reviewing these determinations.

## IV.

■ On this appeal we examine the district court's determination that the 1962 conviction, obtained in violation of the principles later announced in *Griffin,* constitutes an "invalid conviction" for the purposes of special offender status. We begin our analysis by noting that the legislative history relies on *Burgett*. S.Rep. No. 617, 91st Cong., 1st Sess. 164 (1969). In *Burgett,* the Supreme Court held:

> To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense ... is to erode the principle of that case. Worse yet, since the defect in the

---

6. Indeed, Congress repealed the current sentencing scheme, including the DSO provision, primarily to curb sentencing discretion. *See* Sen. Rep. No. 225, 98th Cong., 1st Sess. 65 (1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3248 ("[T]he bill's [the Comprehensive Crime Control Act of 1984] sweeping provisions are designed to structure judicial sentencing discretion, eliminate indeterminate sentencing, phase out parole release, and make criminal sentencing fairer and more certain.").

prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.

389 U.S. at 115, 88 S.Ct. at 262 (citation omitted).

These factors in *Burgett*—whether using the conviction would erode the constitutional right involved, and whether the defendant is being punished again for the same constitutionally tainted conviction— guide a district court's determination. These factors apply for all challenges that prior convictions are "invalid" as a matter of statutory law. This is true for cases, like Burt's, in which the conviction was obtained by constitutionally suspect means, but because of the Supreme Court's retroactivity rules is not "invalid" as a matter of constitutional law.

Congress clearly intended the DSO statutory provisions to exceed the protections afforded by the Constitution. *See* S.Rep. No. 617, 91st Cong., 1st Sess. 163 (1969) ("The scope of confrontation and cross-examination afforded exceeds what the committee feels to be the requirements of the fifth and sixth amendments under due process."). The legislative history accompanying the identical provision in the Comprehensive Drug Abuse Prevention and Control Act of 1970 states that the scope of the hearing exceeds that of simply applying the constitutional definition of "invalid convictions." The Dangerous Special Drug Offender Sentencing provision, 21 U.S.C. § 849, enacted two weeks after the DSO statute, contains the same provision found in 18 U.S.C. § 3575(e). *See* 116 Cong.Rec. H9189 (daily ed. Sept. 24, 1970) (Representative Poff, author of the provision, stated that it "is essentially the same as title X of the Organized Crime Control Act," as amended by the House Judiciary Committee). During the debate on the bill, Repre-

sentative Wiggins described the scope of the provision: "Under section 409, the defendant is permitted to attack collaterally this prior conviction without limitation as to when the prior conviction occurred, *without limitation as to whether any defect alleged in the prior conviction has been previously resolved by appeal or rejected in a separate collateral attack.*" 116 Cong.Rec. H9193 (daily ed. Sept. 24, 1970) (emphasis added).[7]

We conclude that the district court correctly applied the *Burgett* factors to the 1962 conviction. Unquestionably, the 1962 trial, had it occurred after *Griffin*, would be invalid as a matter of constitutional law. *See People of the Territory of Guam v. Ojeda*, 758 F.2d 403, 406 (9th Cir.1985) ("The proper test to judge impermissible comment upon a defendant's right not to testify is whether the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify."); *United States v. Hendershot*, 614 F.2d 648, 654 (9th Cir.1980) (harmless error doctrine applies to prosecutor comment cases).

To allow the government to enhance a subsequent sentence based on a conviction involving such error weakens the important constitutional right against self-incrimination. *Griffin* error is a serious constitutional violation. *See, e.g., Griffin*, 380 U.S. at 614, 85 S.Ct. at 1232 ("[C]omment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice,' which the Fifth Amendment outlaws.") (quoting *Murphy v. Waterfront Commission*, 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678 (1964)). The district court also correctly found that using the 1962 conviction would be punishing Burt twice for the same constitutionally tainted conviction.

---

**7.** The final version of the legislation includes Representative Wiggins' amendment, which precludes a defendant from attacking the validity of a conviction in the sentencing hearing if the conviction occurred five years prior to the filing of the indictment for the present charge. Comprehensive Drug Abuse Prevention and Control

Act of 1970, tit. II, § 411, Pub.L. No. 91–513, 84 Stat. 1266 (codified at 21 U.S.C. § 851(e)). Representative Wiggins's amendment did not affect whether the district court could consider the validity of a prior conviction even though the defendant's challenges had been .rejected on appeal or in a separate collateral attack.

We reject the government's contention that a conviction is "invalid" for the purposes of the statute only if the conviction was or could have been overturned on direct or collateral review. The government's assertions misconstrue the Supreme Court's delicate balancing between retroactivity and constitutional rights. That the Supreme Court has made a constitutional right fully retroactive indicates that the conviction is invalid for all purposes. *See, e.g., United States v. Tucker*, 404 U.S. 443, 449, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972) (enhanced sentence based on prior uncounseled felony convictions invalid); *Brown v. United States*, 610 F.2d 672, 675 (9th Cir. 1980) (conviction invalid due to ineffective assistance of counsel may not be used to enhance sentence). However, nonretroactivity of a right does not imply that a conviction obtained in violation of that right is valid for all purposes. Moreover, the Court's decision to make a constitutional right nonretroactive might change in a given case if the defendant may be punished a second time for the offense.

The Supreme Court often declines to make a decision retroactive for reasons other than the importance of the constitutional right. The Court in several instances has made a decision nonretroactive because of the effect such action would have on the "administration of justice." *See, e.g., Solem v. Stumes*, 465 U.S. 638, 643, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984) (quoting *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967)) (three factors traditionally are used to determine retroactive effect: " '(a) the purpose to be served by the new standard, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards' "). One major motivation for the Supreme Court's decision not to make

*Griffin* retroactive was the fear that such a decision would open the "floodgates" to endless habeas corpus litigation. *Tehan*, 382 U.S. at 418, 86 S.Ct. at 466 ("A retrospective application of *Griffin v. California* would create stresses upon the administration of justice more concentrated but fully as great as would have been created by a retrospective application of *Mapp*.").[8]

Finally, our interpretation best advances a rational and fair DSO sentencing scheme. To hold otherwise would require a court to disregard a conviction received in 1967, after *Griffin*, that involved *Griffin* error, but to use the same conviction to enhance a defendant's sentence if it occurred in 1962. Congress did not intend such disparate treatment when it enacted the legislation.

The sentence enhancement statute was designed to apply to "habitual" offenders, and Congress recognized that individuals who did not receive fair trials earlier must be given the opportunity to call those convictions into question at a separate DSO hearing. We hold that the district court properly denied the government's DSO application.

AFFIRMED.

SNEED, Circuit Judge, dissenting:

I respectfully dissent.

Burt's 1962 conviction is "valid" under the dangerous special offender (DSO) statute, 18 U.S.C. § 3575. A defendant is entitled to dispute the validity of prior convictions at his DSO hearing; however, the standard by which the trial court determines validity should be the same as in other collateral proceedings. Specifically, if a defendant challenges a prior conviction on the basis of a Supreme Court decision that is not retroactive, so that the challenge would fail on direct or collateral review, then the sentencing court should not

---

**8.** We agree with the district court that this concern is inapplicable to DSO hearings. Indeed, Congress may have recognized that in some cases, such as this one, Supreme Court decisions may preclude a defendant from having the prior conviction overturned. Thus, it provided the separate hearing provision in the statute to prevent punishing a defendant twice because of a constitutionally tainted conviction, while preserving the courts from an opening of the "floodgates."

ignore the conviction when applying 18 U.S.C. § 3575(e).

Nothing in the legislative history of the DSO statute precludes this interpretation. The Senate Report implies that *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), offers guidance as to what is an "invalid" conviction. S.Rep. No. 617, 91st Cong., 1st Sess. 164 (1969). *Burgett* holds that a trial court may not admit, either to support guilt or to enhance punishment for another offense, a prior conviction that might have been obtained in violation of the Sixth Amendment right to counsel. *Id.* at 115, 88 S.Ct. at 262. However, the right to counsel, as defined in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), was applied retroactively in *Pickelsimer v. Wainwright*, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41 (1963) (per curiam), and was the basis of the reversal of a conviction under a recidivist statute in *Greer v. Beto*, 384 U.S. 269, 86 S.Ct. 1477, 16 L.Ed.2d 526 (1966) (per curiam). Thus, *Burgett* supports the position of this dissent.

The Supreme Court, however, chose not to apply *Griffin* retroactively. *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). Therefore a conviction obtained prior to 1965 may not be attacked on the basis of *Griffin* error in habeas corpus proceedings. Nor should it be disregarded in DSO sentencing hearings.[1]

By declining to apply *Griffin* retroactively, the Supreme Court decided that defendants convicted in trials involving *Griffin* error would suffer different consequences depending on whether their trials took place before or after *Griffin*. I see no reason to depart from this approach. A trial tainted with *Griffin* error is as likely to result in a true verdict as any other trial,

because "the Fifth Amendment's privilege against self-incrimination is not an adjunct to the ascertainment of truth." *Tehan*, 382 U.S. at 416, 86 S.Ct. at 465. Hence a pre-*Griffin* conviction resting on *Griffin* error provides the required prerequisite to showing that a defendant is a habitual criminal. A post-*Griffin* conviction tainted with *Griffin* error, however, cannot provide the required showing because it is invalid within the meaning of the DSO statute.

The majority is concerned with our standard of review. As I see it, this case presents a question of law. We are in as good a position as the district court to answer it. *See United States v. DiFrancesco*, 449 U.S. 117, 141, 101 S.Ct. 426, 439, 66 L.Ed.2d 328 (1980) (under 18 U.S.C. § 3576, an appellate court is empowered to correct a lower court's legal error). I think both the district court and the majority answered the question incorrectly. Therefore I dissent.

---

1. In *United States v. Scarborough*, 777 F.2d 175 (4th Cir.1985), the court limited the grounds on which a prior conviction could be challenged in a DSO hearing to those that would support a challenge in other collateral proceedings. Scarborough complained that he was denied a DSO sentencing hearing. At the hearing, he would have attacked one of his prior convictions as invalid because it was based on evidence that should have been suppressed. *Id.* at 181. The

court ruled that denying Scarborough a hearing was harmless error. Scarborough had had a full and fair opportunity to litigate the suppression issue at his first trial. Hence *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), would have barred him from raising the issue at his DSO sentencing hearing, just as it barred him from raising it in a habeas corpus attack. *Id.* at 182–83.