**UNITED STATES of America**

v.

**Harry T. OLIVERI, a/k/a Keeth Claud Lewis, Appellant.**

**No. 86–1315.**

United States Court of Appeals, Third Circuit.

Argued Nov. 4, 1986.

Decided Nov. 21, 1986.

**62**

Donald M. Moser, Burton A. Rose (argued), Peruto, Ryan & Vitullo, Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Ronald A. Sarachan (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before SLOVITER and STAPLETON, Circuit Judges, and FARNAN, District Judge[*].

### OPINION OF THE COURT

SLOVITER, Circuit Judge.

Harry T. Oliveri appeals from the district court's imposition of an eight-year prison sentence under the dangerous special offender statute, 18 U.S.C. § 3575. Oliveri contends that the district court erred in concluding that the government had succeeded in establishing that Oliveri was dangerous within the meaning of 18 U.S.C. § 3575(f).

Oliveri pled guilty to a one-count indictment charging him with possession of a firearm as a convicted felon in violation of 18 U.S.C. Appendix I, § 1202(a)(1) (now codified at 18 U.S.C. Appendix II, § 1202(a)(1)), which carried a maximum penalty available of two years' imprisonment and a $10,000 fine. Prior to entering into a plea agreement with Oliveri, the government had filed a notice of request for dangerous special offender status, seeking enhanced sentencing of Oliveri as a dangerous special offender under 18 U.S.C. § 3575. Pursuant to Oliveri's plea agreement, the government and Oliveri agreed to a maximum sentence of eight years' imprisonment. Oliveri retained the right to challenge the government's petition for dangerous special offender classification and argue for a lesser sentence.

At the hearing, Oliveri conceded that he was a "special offender" within the definition of 18 U.S.C. § 3575(e)(1) in that he had two or more prior convictions punishable by a sentence of one year or more, he had been incarcerated for one of those prior convictions, and less than five years had

[*] Hon. Joseph J. Farnan, United States District Court for the District of Delaware, sitting by designation.

elapsed between the commission of the charged felony and the commission of the last such prior offense.

In finding that Oliveri was dangerous, the court reviewed the extent and nature of Oliveri's prior record and concluded that Oliveri was "dangerous because the evidence that I've looked at shows that you have no regard for the law and the rights of the public." App. at 62. For that reason, the court found "that a period of confinement longer than that provided for the commission of the felony which is charged here in this Indictment is required for the protection of the public from further criminal conduct by you...." App. at 60. The court then sentenced Oliveri pursuant to 18 U.S.C. § 3575 to the eight-year maximum provided for by the plea agreement.

The standard for this court's review of a finding of dangerous special offender status is specified by statute:

> Review of the sentence shall include review of whether the procedure employed was lawful, the findings made were clearly erroneous, or the sentencing court's discretion was abused.

18 U.S.C. § 3576; *see also United States v. Felder*, 744 F.2d 18, 20 (3d Cir.1984). Oliveri argues only that the district court abused its discretion in concluding that he was dangerous within the meaning of 18 U.S.C. § 3575(f).

 He argues that unlike the appellants in numerous other cases applying the dangerous special offender statute, his prior record "reflects neither a pattern of violence nor drug trafficking." Appellant's Brief at 14. However, nothing in the statute requires a finding of physical violence or drug trafficking as part of a determination of dangerousness under section 3575(f). Instead, the statute focuses on the probability that the defendant will engage in future criminal conduct:

> A defendant is dangerous for purposes of this section if a period of confinement longer than that provided for such [the underlying] felony is required for the protection of the public from further criminal conduct by the defendant.

18 U.S.C. § 3575(f). We have stated that this definition of dangerousness does not require the court to find a possibility of physical violence. *United States v. Davis*, 710 F.2d 104, 108 (3d Cir.), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 505, 78 L.Ed.2d 695 (1983).

Oliveri argues that *Davis* is not controlling because Davis' record showed serious past crimes of violence, such as murder and atrocious assault and battery. Oliveri suggests that we should apply criteria similar to those recently enunciated in *United States v. Himler*, 797 F.2d 156, 160 (3d Cir.1986), where we stated that a finding of dangerousness under the Bail Reform Act of 1984, 18 U.S.C. § 3142(e), is authorized only in cases where there is a danger of recidivism in one or more of the crimes actually specified by the bail statute, that is, crimes of physical violence or drug trafficking. *See also United States v. Perry*, 788 F.2d 100, 113 (3d Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 218, 93 L.Ed.2d 146 (1986). However, the congressional intent underlying the Bail Reform Act, which is concerned with temporary detention before defendant begins serving the sentence, differs from that underlying the Dangerous Special Offender Act, which is concerned with the length of that sentence.

Although we agree with Oliveri that the legislative history of the Dangerous Special Offender statute demonstrates that Congress did not intend the finding of dangerousness to be based solely on the recidivism of the defendant, Congress signified its intent to reach " 'those felons whose prior convictions made them likely to repeat' and thus to pose a threat to society." *Davis*, 710 F.2d at 107–08 (citing S.Rep. No. 617, 91st Cong., 1st Sess. 88 (1969)). We have therefore held that the "nature and frequency of defendant's previous encounters with the law," when coupled with "other information contained in the presentence report," provide a sufficient basis for a finding that the defendant "has no regard for the law and the rights of the public." *Davis*, 710 F.2d at 108 (quoting *United States v. Warme*, 572 F.2d 57, 62

(2d Cir.), *cert. denied,* 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 393 (1978)); *see also United States v. Soto,* 779 F.2d 558, 562 (9th Cir.), *as amended by* 793 F.2d 217 (1986); *United States v. Scarborough,* 777 F.2d 175, 183 (4th Cir.1985) ("In certain circumstances, the evidence of prior crimes itself will be sufficient to find that a defendant is dangerous due to the frequency of the crimes and their character").

 Oliveri's prior adult record amply supports the district court's conclusion of dangerousness. In 1972, Oliveri was convicted of larceny and sentenced to three years' probation. Again in 1972, he was convicted of attempted car theft and sentenced to thirty months' probation. In 1973, Oliveri was convicted of receiving stolen goods and uttering and publishing a forged instrument and sentenced to twenty-three months' imprisonment and three years' probation. Again in 1973, he was convicted of auto theft and sentenced to five years' probation. In 1975, Oliveri was convicted for possession of an illegal weapon, not a firearm, for which he received three years' probation, and for burglary, for which he received eight to twelve months' imprisonment. Finally in 1980, Oliveri was convicted both for bank robbery and for possession of goods stolen from interstate commerce for which he received seven years' probation and eight years' imprisonment respectively. Thus, Oliveri had eight convictions of escalating seriousness over a span of 14 years before committing the firearm offense in question.

Moreover, the district court did not rely entirely on Oliveri's prior record. Rather, the court also based its conclusions on Oliveri's presentence report, which Oliveri had accepted as correct. That report showed numerous violations of probation by Oliveri. It also provided insight into Oliveri's attitude towards crime, since it included statements by Oliveri indicating that he perceived crime as a career in which he would remain until more lucrative opportunities presented themselves. Specifically, Oliveri had stated that he avoided employment "because I made good money steal-ing," and that had he been accepted by the Teamsters Union he would have gone straight because "the money in truck-driving is better than the money in stealing." App. at 39–40.

In addition, the court heard testimony from an FBI agent which indicated that Oliveri might become involved in future crimes involving weapons. Specifically, the agent testified that Oliveri told him both that Oliveri could provide the agent with more revolvers and that Oliveri had "some future use" for the revolver already in his possession. App. at 28.

Given the totality of this evidence, we cannot conclude that the court abused its discretion in finding that a period of incarceration of more than two years was necessary to protect the public from the possibility of future criminal conduct by Oliveri.

For the above reasons, we will affirm the order of the district court.