UNITED STATES of America,
Plaintiff-Appellee,

v.

Vernon McCOY, Defendant-Appellant.

No. 84–2895.

United States Court of Appeals,
Seventh Circuit.

July 23, 1985.

Joel V. Merkel, Asst. U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Lee T. Lawless, Federal Public Defender, St. Louis, Mo., for defendant-appellant.

Before BAUER and ESCHBACH, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

This appeal requires us to interpret and to apply provisions of the Dangerous Special Offender Act, 18 U.S.C. §§ 3575–78 (1982), although other issues are presented and addressed. The appellant Vernon McCoy was found guilty of being a convicted felon in possession of a firearm in violation of 18 U.S.C. App. I § 1202(a)(1) (1982), and he was sentenced as a "dangerous special offender" pursuant to 18 U.S.C. § 3575(b). We vacate the sentence and remand to the district judge for findings supporting his conclusion that the appellant is a dangerous special offender and for reasons regarding the length of the sentence imposed.

Late on the evening of April 29 or early in the morning of April 30, 1984, McCoy and David Lee Jones were arrested in or near a blue pick-up truck parked in front of a bar in Brooklyn, Illinois. Officers Simms and Johnson of the Brooklyn Police Department and Officers Verbeck and Apostle of the National City Police Department participated in the arrest. The police officers were looking for the pick-up truck because it had previously been identified as being involved in a hit-and-run accident. When the police officers located the truck in front of the bar, McCoy was sitting in the driver's seat and Jones in the front passenger seat. There was no evidence that McCoy ever operated the truck.

At trial, Officer Simms testified that he ordered McCoy and Jones out of the truck, that he searched McCoy at the rear of the truck and found a .38 caliber pistol in McCoy's waistband, and that he announced in a loud voice that he had found a gun. Johnson testified that he searched Jones and found nothing and then later searched the truck and that he overheard Simms say that he had found a gun on McCoy.

Two other officers who arrived later at the scene also testified at the trial. Officer Verbeck contradicted Simms' statement that Simms searched McCoy at the rear of the truck. Verbeck said he saw Simms search McCoy at the side of the truck. He also stated that he never saw a gun, but he overheard someone mention one. He also admitted that he made out a police report indicating that a .38 caliber pistol was found in the truck. Officer Apostle corroborated Verbeck's testimony that Simms searched McCoy at the side or front of the truck, not at the rear as Simms claimed. Apostle also testified that he saw no firearm, but that he too heard someone mention a .38 caliber gun.

Jones testified that on the night of April 29, 1984, or the early morning of April 30, 1984, he did not see a firearm and he did not know if McCoy had one and that while he and McCoy were at the Brooklyn police station McCoy asked Jones to "take the weight" for the gun because Jones would get no more than a six-month sentence for possession of the gun because it was not loaded. Finally, a witness for the defense testified that both Apostle and Verbeck told him that the .38 caliber pistol had been found in the truck.

## I

Defendant raises four issues on appeal: (1) the district judge erroneously instructed the jury on constructive possession of a firearm when the evidence did not support a charge of constructive possession; (2) the Government did not give the defendant "reasonable" notice pursuant to 18 U.S.C. § 3575 of its intention to prosecute the defendant as a dangerous special offender; (3) the district judge failed to articulate his reasons for finding the defendant to be a dangerous special offender and for imposing an enhanced ten-year sentence on defendant; and (4) an enhanced sentence of ten years when the underlying felony carries a maximum sentence of two years is disproportionate as a matter of law and disproportionate based upon the facts of this case. We shall discuss each of these issues.

## A

At trial, over defendant's objection, the judge instructed the jury that

[a] person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

■ The defendant contends that there was no evidence to support a charge of constructive possession. We agree.[1] Although there was some evidence that a gun was found in or around the truck, and not on McCoy's person, there was no evidence that the defendant controlled the truck, or that at the time he was arrested he had the power to exercise "dominion or control" over the gun.[2] True, defendant was found in the driver's seat of the truck, but that

without more does not support any inference that he controlled the truck.

The Government argues that the testimony of David Lee Jones, a passenger in the vehicle at the time McCoy was arrested, supports a charge of constructive possession. Jones testified that he knew a gun had been found "somewhere around the truck" and that, at the police station, after their arrest, McCoy asked Jones to "take the weight" for the gun because he would be subject to lesser sanctions because the gun was not loaded. This evidence, however, demonstrates only that McCoy knew a gun had been found and that it was not loaded, and also perhaps that he owned it. It does not prove that at the time of his arrest McCoy had any physical power or control over it. *Compare United States v. Haley*, 758 F.2d 1294, 1297–98 (8th Cir. 1985) (constructive possession shown where gun found in room of house where defendant obviously resided).

■ Notwithstanding, we believe that the erroneous jury instruction was harmless (*see* 28 U.S.C. § 2111 (1982); Fed.R. Crim.P. 52(a)) and that it was harmless beyond a reasonable doubt. *See United States v. Hastings*, 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981–82, 76 L.Ed.2d 96 (1983); *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). If the erroneous jury instruction had not been given, the jury undoubtedly would have convicted the defendant of actual possession. *See Hastings*, 461 U.S. at 510–11, 103 S.Ct. at 1981–82 ("The question a reviewing court must ask is this: absent ... [the alleged error], is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?"). Simms' testimony that he found the gun in McCoy's waistband was uncontradicted. It

---

1. The district judge recognized that there was a substantial question as to whether the evidence supported a charge of constructive possession. Nonetheless, after lengthy questioning of defense counsel with respect to what counsel intended to argue to the jury regarding where the gun was found and after defense counsel gave evasive answers to these questions, the district judge decided to give the instruction apparently

in order to preclude defense counsel from arguing that his client was in constructive, but not actual, possession of the gun.

2. Of course, in this regard we do not consider Simms' testimony that he found a gun in McCoy's waistband. That testimony goes to McCoy's actual, not constructive, possession.

was corroborated by the testimony of the other officers who knew that a gun had been found during the arrest somewhere in or around the truck, by evidence that none of the other officers found the gun, and by Jones' testimony that McCoy stated that the recovered gun was unloaded.[3]

We also do not believe that the jury could have been confused by the instruction, so that it improperly convicted McCoy on the theory of constructive possession. *See Hastings*, 461 U.S. at 516, 103 S.Ct. at 1984 (Stevens, J., concurring); *Kotteakos v. United States*, 328 U.S. 750, 763–64, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946). The Government's position throughout the trial, as demonstrated by its opening and closing arguments and the evidence it presented at trial, was that McCoy was in actual possession of the firearm. At trial, defense counsel acknowledged this. In addition, rather than argue that the evidence regarding the recovery of a gun in or around the truck and McCoy being found in the driver's seat of the vehicle supported a finding of constructive possession, the Government characterized this evidence as inconsequential inconsistencies resulting from the arresting officers' inexperience. The Government also repeatedly pointed out to the jury that this evidence was entirely consistent with its theory of actual possession.

Defense counsel also focused almost exclusively on the question of whether the evidence supported a theory of actual possession. His central theme was that the gun was found in or around the truck and since McCoy did not control the truck McCoy did not possess the gun.

Thus, viewing the record as a whole, we are convinced that the jury found the defendant guilty on a theory of actual possession, and that the constructive possession instruction, while error, was harmless beyond a reasonable doubt. *See United States v. Mclister*, 608 F.2d 785, 791 (9th Cir.1979); *United States v. Bradley*, 447

F.2d 657, 660 (3d Cir.1971) (per curiam); *Feldstein v. United States*, 429 F.2d 1092, 1094–95 (9th Cir.), *cert. denied*, 400 U.S. 920, 91 S.Ct. 174, 27 L.Ed.2d 159 (1970); *Schybinger v. Interlake S.S. Co.*, 273 F.2d 307, 313–14 (7th Cir.1959).

**B**

Trial of this case was set for and began on September 10, 1984. On September 4, 1984, McCoy's attorney was served by the Government with a notice of its intention to prosecute McCoy as a dangerous special offender pursuant to 18 U.S.C. § 3575(b). Prosecution under that provision permits the trial judge, if he finds that the defendant is a dangerous special offender, to impose a substantially stiffer penalty (up to a maximum of twenty-five years imprisonment) than he would otherwise have imposed on the defendant if the defendant had been prosecuted and sentenced only for the particular offense charged. *See* 18 U.S.C. § 3575(b).

With respect to his sentencing as a dangerous special offender, the defendant first contends that he could not be sentenced as such because the Government did not give him reasonable notice of its intention to prosecute him as one. 18 U.S.C. § 3575(a) requires that such notice be filed "... a reasonable time before trial or acceptance by the court of a plea of guilty or *nolo contendere*, ...." Defendant claims that notice six days before trial is not reasonable.

██ Defendant argues that six-days notice is *per se* unreasonable, and he asks us to read into the statute a minimum thirty-day notice period, such as the one set forth in 18 U.S.C. § 3161(c)(2) (1982). This we decline to do for three reasons. First, we note that the statute itself contains no specific time limitation, presumably a reflection of congressional intent that "rea-

---

**3.** The defendant's assertion that the fact that discovery showed the gun was actually loaded undermines the Government's theory of actual possession is incorrect. The relevance of Jones' testimony regarding McCoy's statements at the police station is that McCoy himself claimed to have special knowledge about the gun and professed an interest in it, not that McCoy correctly knew whether or not the gun was loaded.

sonableness" is to be decided on a case-by-case basis. *See Nilva v. United States,* 352 U.S. 385, 395, 77 S.Ct. 431, 437, 1 L.Ed.2d 415 (1957); *United States v. Ray,* 683 F.2d 1116, 1122–23 (7th Cir.), *cert. denied,* 459 U.S. 1091, 103 S.Ct. 578, 74 L.Ed.2d 938 (1982). Second, the issue of the defendant's status as a dangerous special offender is never presented to the jury, 18 U.S.C. § 3575(a), and is only presented to the judge after the defendant's guilt has been determined, *id.* The judge only considers the issue at a post-conviction hearing which must occur no earlier than ten days after the defendant is found guilty. 18 U.S.C. § 3575(a).[4] The Government is required, in its pretrial notice, to "set[ ] out with particularity the reasons why such [United States] attorney believes the defendant to be a dangerous special offender," 18 U.S.C. § 3575(a). In addition, the defendant is presumably aware of any charges pending against him and most, if not all, of the evidence contained in the presentence report. *See United States v. Thornley,* 733 F.2d 970, 972 (1st Cir.1984) (district judge may also consider pending charges); *United States v. Neary,* 552 F.2d 1184, 1194 (7th Cir.), *cert. denied,* 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139 (1977). Thus, the defendant would have at least sixteen days within which to review most of the Government's evidence and to prepare his defense to this charge. Sixteen days would usually be a sufficient time in which defense counsel could properly prepare a defense against this charge, particularly given that the issues involved in determining whether the defendant is a dangerous special offender, e.g., the defendant's age (over 21), his prior criminal record, his special expertise as a criminal, his income from his criminal activities, his organized crime activities, and the need to protect the public from further criminal conduct by the defendant, are not unduly complex.

Third, the reason for a thirty-day delay between initial appearance and trial set forth in 18 U.S.C. § 3161(c)(2) does not apply with the same force in sentencing proceedings. The thirty-day period is necessary in order to give the defendant a minimum period in which to adequately prepare for trial, i.e., to ensure that the most crucial and complex phase of the proceedings—the determination of guilt—is correctly determined. The determination of the proper sentence to be imposed on the defendant, although important, is not as crucial as a determination of guilt or innocence, and it usually does not involve similarly complex issues. Thus, we hold that six-days notice is not *per se* unreasonable under 18 U.S.C. § 3575. *See also Haley,* 758 F.2d at 1298 (deciding without giving reasons that six-days notice was "reasonable" under 18 U.S.C. § 3575(a)).

▪ We also hold that, based on the facts of this case, six-days notice before trial was reasonable.[5] The sentencing hearing was conducted on October 23, 1984, forty-nine days after the Government filed a notice of its intention to treat the defendant as a dangerous special offender. Forty-nine days afforded the defense adequate time in which to prepare for the sentencing hearing. Indeed defendant does not seriously argue here that he was prejudiced by being denied an adequate time to prepare for the sentencing hearing.

---

**4.** It may occur even later if the court determines that the defendant (or the United States Attorney) needs more time to inspect the presentence report. *See* 18 U.S.C. § 3575(b) ("The court *shall* permit ... the defendant ... to inspect the presentence report sufficiently prior to the hearing as to afford a *reasonable* opportunity for verification.") (emphasis added).

**5.** The Government's reliance on cases discussing the reasonableness of notice under Fed.R. Crim.P. 42(b), *see United States v. Ray,* 683 F.2d 1116 (7th Cir.), *cert. denied,* 459 U.S. 1091, 103

S.Ct. 578, 74 L.Ed.2d 938 (1982); *In re Sadin,* 509 F.2d 1252 (2d Cir.1975); *United States v. Hawkins,* 501 F.2d 1029 (9th Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974), is misplaced. Those cases demonstrate that rarely, if ever, do proceedings under Fed.R. Crim.P. 42(b) involve contested facts or facts of which the defendant may be unaware. As a result, short advance notice could be reasonable for a proceeding brought pursuant to Fed.R. Crim.P. 42(b), yet be unreasonable for a proceeding brought pursuant to 18 U.S.C. § 3575.

Rather, he says that he was denied the right to an adequate period of time to prepare for trial. Even if we assume that a defense counsel would prepare better for a case in which the defendant faces a maximum possible twenty-five year sentence than he would for a case in which the defendant faces a maximum two-and-one-half year sentence, we find that the defendant in the instant case was not prejudiced. The evidence against the defendant on the charge of being a convicted felon in possession of a firearm was overwhelming and the facts and issues were straightforward. The entire trial took one day. This was not a difficult case. Thus, once being informed of the Government's intention, defense counsel had six days in which to better prepare himself for a simple trial.[6]

Defendant also argues that the six-days notice interfered with his ability to conduct plea bargaining. At the time he received notification of the Government's intention to prosecute him as a dangerous special offender, there were also state charges pending against him in connection with the same events and he was represented on those charges by different counsel. He argues that the six-days notice interfered with his ability to coordinate plea bargaining with the state and federal governments.

▮ The problem with this argument is that the defendant simply asserts that there was interference. He does not articulate what the interference was or how he was prejudiced by it. We are not required to vacate a sentence when a defendant merely alleges, without giving reasons, that he has been prejudiced by an interference with his plea bargaining. This is particularly true given that a defendant has no absolute right to plea bargaining, *United*

States v. Pleasant, 730 F.2d 657, 664 (11th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984), and that there was no evidence presented that plea negotiations were even being conducted.[7] In the absence of a more substantial claim than the one that has been raised here, we decline to speculate as to the possibility of interference or prejudice.

Finally, the defendant contends, again in a conclusory fashion, that the six-days notice prejudiced his decision to testify in his own defense. We fail to understand this argument. Even if the Government notified the defendant three months in advance of its decision to prosecute him as a dangerous special offender, or even if it decided not to prosecute him at all, a criminal defendant is well aware that if he takes the stand he can be impeached by any prior convictions. The defendant's decision to testify will be influenced by his prior criminal record, not by whether the Government intends to prosecute him as a dangerous special offender. Thus, whether the defendant received six-days notice or sixty-days notice is simply irrelevant. True, the defendant may be more willing to perjure himself if he knows that the judge can only impose a two-year, as opposed to a twenty-five year, sentence. But the purpose of section 3575(a)'s notice requirement is not the facilitation of perjury; rather, it is to give defendants advance notice of the consequences of a guilty plea. *United States v. Fatico,* 458 F.Supp. 388, 407 (E.D.N.Y. 1978), *aff'd,* 603 F.2d 1053 (2d Cir.1979), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980). And there is no indication that the defendant in this case ever considered pleading guilty.

---

6. At oral argument, in response to a question raised by the court, regarding how earlier notice might have affected the defense at trial, counsel for defendant appeared to concede that there was no effect.

7. Presumably, had the notice adversely affected any plea negotiations already in progress, the defendant would have moved for a continuance. Although the defendant was not required to

move for a continuance, *see infra* note 8, his failure to do so indicates a lack of any substantial prejudice particularly when it is clear from the record that the defendant did not move for a continuance not because he believed that he could not inform the judge of the notice, but rather because he believed that if the continuance were granted, his claim for untimely notice could be eviscerated.

We are content that the Government provided McCoy with reasonable notice of its intention to prosecute him as a dangerous special offender.[8]

### C

■ The defendant and the Government agree that the district judge did not, as is required by statute, "place in the record ... [his] reasons for" imposing the ten-year sentence. 18 U.S.C. § 3575(b). The record bears this out. We therefore must vacate the sentence and remand the case to the district judge so that he may set forth his reasons. *See* 18 U.S.C. § 3576; *United States v. Felder*, 706 F.2d 135, 141 (3d Cir.1983) (sentence vacated because district judge failed to articulate "its reasons for the sentence imposed," in particular failing to indicate why a twelve-year enhanced sentence for a firearms violation was proportionate).

■ We also agree with the defendant that the district judge failed to set forth the specific findings on which he based his conclusion that the defendant is a dangerous special offender. The district judge's only findings on this issue were

> [b]ased upon the evidence submitted in connection with the hearing pursuant to § 3575 of Title 18, the Court finds by a preponderance of the evidence the Defendant is a dangerous special offender. I am basing this determination on the evidence of the certified copies of the conviction of the prior offenses, of the evidence that I heard at the trial in this

case, and from the evidence from the presentence report but not any material in the presentence report concerning arrests for which there were no convictions. Having concluded that the Defendant is a special dangerous offender and considering the question of proportionality, it is the sentence of this court that the Defendant be sentenced to the custody of the Attorney General of the United States for a period of ten years.

Thus, the district judge merely identified the source of the information he relied on in making his determination; he made no specific findings, particularly with respect to the issue of whether the defendant would be a danger to the public. *See United States v. Jarrett*, 705 F.2d 198, 208–09 (7th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984) ("A finding of dangerous under section 3575(f) involves an evaluation of the defendant's character and a prediction of future criminal conduct."). 18 U.S.C. § 3575(b) clearly contemplates that a district judge will set forth his findings in sufficient detail so that a reviewing court may conduct an adequate review of the sentence and a defendant can effectively challenge those findings. *See also* 18 U.S.C. § 3575(e) (listing statutory criteria for determining if defendant is a dangerous special offender). The total absence of findings in this case, apart from the identification of the evidence relied upon, precludes any meaningful judicial review. *Compare Haley*, 758 F.2d at 1298–99 (court reviews detailed

---

8. We do not find defendant's failure to request a continuance on the basis of the six-days notice dispositive of this issue. If the defendant had requested a continuance, he would have had to inform the district judge that the Government intended to prosecute him as a dangerous special offender. Section 3575(a) provides that "[i]n no case shall the fact that the defendant is alleged to be a dangerous special offender ... be disclosed before any ... finding of guilty to the presiding judge without the consent of the parties." *See also United States v. Darwin*, 742 F.2d 1325, 1326 (11th Cir.1984); *United States v. Bailey*, 537 F.2d 845, 848–49 (5th Cir.1976), *cert. denied sub nom., Harstrom v. United States*, 429 U.S. 1051, 97 S.Ct. 764, 50 L.Ed.2d 767 (1977). Although the defendant could have agreed to inform the judge, *see United States v. White*, 748 F.2d 257, 259 (5th Cir.1984) (only prosecutor prohibited by section 3575 from informing the judge of its intention to prosecute defendant as a dangerous special offender); *United States v. White*, 706 F.2d 506, 510 (5th Cir.1983); *but see Darwin*, 742 F.2d at 1327–28 (court suggests that plain language of statute means that no one can inform trial judge of the section 3575 charge without consent of both parties), we do not believe that the defendant should be compelled to waive his right not to consent in order to preserve his claim that the notice was not reasonable, although we also do not believe that the defendant can fail to request a continuance solely to ensure that the notice will be untimely.

findings of district judge regarding the defendant's age, prior criminal record, recidivist nature, and criminal disposition); *United States v. White*, 748 F.2d 257, 260–61 (5th Cir.1984) (same); *United States v. Felder*, 744 F.2d 18, 21 (3d Cir.1984) (same).

 The Government argues that the district judge's identification of his source of information sufficiently sets forth the district judge's "specific findings" because the reviewing court can look to those sources to determine if the district judge could properly find the defendant is "special" or "dangerous." We reject this argument. A district judge is granted broad discretion to impose a sentence that he believes is justified and necessary based upon the individual facts of the case. But a reviewing court cannot decide if the district judge abused that discretion merely by looking at a laundry list of prior convictions or facts contained in the presentence report. Without specific findings, a reviewing court can never know which convictions or facts the district judge deemed important or why the district judge found the defendant to be a danger to the public. Despite, for example, the fact that a long list of prior convictions strongly implies that the defendant is a recidivist, a district judge might rationally find, based on other facts, that the defendant is not a danger to the public. The specific finding and the evidence relied upon would have to be set forth in the record in order for a reviewing court to uphold the district judge's decision. In these kinds of cases, the issue is not whether the district court *could* have imposed the particular sentence, but whether it *in fact* abused its discretion in imposing the sentence it did. *See Felder*, 744 F.2d at 20 (court observes that Congress intended that appellate courts scrutinize with particular care sentences imposed pursuant to 18 U.S.C. § 3575, and therefore required trial judges to make more explicit detailed findings than are ordinarily required in routine sentencing cases).

**9.** The Government suggested at oral argument that this court itself may impose a sentence. Although this is true, *see* 18 U.S.C. § 3576, the court can only do so if the district court has

Accordingly, pursuant to the broad power granted us by 18 U.S.C. § 3576, we direct the district judge, on remand, to include in the record not only his reasons for imposing the sentence, but also his specific findings regarding defendant's status as a dangerous special offender.[9] Of course, on remand the district judge may not impose a more severe sentence because the Government did not take a cross-appeal seeking a "more severe" sentence pursuant to 18 U.S.C. § 3576. *See also United States v. Calabrese*, 755 F.2d 302, 306 (2d Cir.1985).

### D

Given that we have already determined that the sentence must be vacated and the case remanded for further findings, both parties agree and we find that we need not reach the issue of whether the ten-year sentence was disproportionate as a matter of law or disproportionate based on the facts of this case.

The judgment of conviction is affirmed, but we vacate the sentence and remand the case to the district court for appropriate findings to support the sentence. Circuit Rule 18 shall not apply.

already made the requisite findings of fact and set forth its reasons for the sentence imposed, *id.* Thus, that provision has no applicability in the instant action.