UNITED STATES of America,
Plaintiff-Appellee,

v.

Leroy JAMES, Defendant-Appellant.

No. 86–1485.

United States Court of Appeals,
Sixth Circuit.

Argued April 16, 1987.

Decided June 3, 1987.

R. Steven Whalen (argued), Detroit, Mich., for defendant-appellant.

Lynn A. Helland, Asst. U.S. Atty., Detroit, Mich., Kathleen M. Nesi, Asst. U.S. Atty. (argued), for plaintiff-appellee.

Before MARTIN, JONES and MILBURN, Circuit Judges.

MILBURN, Circuit Judge.

Defendant Leroy James appeals his jury conviction of possession of a firearm by a previously convicted felon in violation of 18 U.S.C.App. § 1202(a)(1). Because the trial court committed reversible error in instructing the jury on constructive possession when the government had presented no evidence to support such a verdict, we reverse and remand for a new trial.

**I.**

On May 1, 1985, at approximately 10:30 a.m., Detroit Police Officers Julie Bloomfield and Bobby Gary, accompanied by six or seven other officers, arrived at 16585 Oakfield Street in the City of Detroit to effectuate the arrest of defendant pursuant to a warrant.[1] An individual named Henry permitted the officers to enter the house, which was owned by Patricia Brown. Officers Bloomfield and Gary ascended a stairway to the second floor. When they approached a bedroom, they could hear a male voice from behind the closed door.

According to Bloomfield, the officers, who had their guns drawn, knocked on the door and announced themselves as police officers. After knocking a second time, defendant opened the door. Both officers testified they observed defendant standing in the bedroom holding a handgun pointed in the officers' general direction. They further testified that after three requests, defendant dropped the weapon on the bed. The handgun was loaded at that time.

Defendant testified that after the officers announced themselves, he told them to wait a minute so he could get dressed. He opened the door and Officer Gary asked him to step out of the bedroom. Defendant

1. The record before us does not reveal the basis for the warrant. Defendant testified that a jury ultimately acquitted him of the charge.

testified he complied and was handcuffed by Gary. Defendant denied having a gun in his hand at that time. Rather, after he was handcuffed, a uniformed officer entered the bedroom, looked under the mattress, and pulled out the gun.

Defendant denied he owned the gun admitted as People's Exhibit 1. He testified he was present in the bedroom when the gun was pawned to Ms. Brown, the owner of the house, for a $25.00 bag of marijuana and $50.00 in cash. Defendant asserted that on the date of his arrest, he was not aware "exactly" that the gun was in the bedroom, but he was aware Ms. Brown had received the gun in the bedroom.

On December 17, 1985, a federal grand jury returned a one-count indictment charging that defendant, a convicted felon, "did knowingly possess" a revolver on May 1, 1985. In describing the elements of the offense during opening argument, the prosecutor noted that possession could be actual or constructive. The prosecutor stated that because the evidence would show the gun "was actually in [defendant's] hand, ... it is really not an issue."

After deliberating approximately two hours, the jury sent a note asking, "Does the person have to have a firearm in his or her hand to be in his possession?" The court informed counsel he was going to read the definition of possession from 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* (1977). Defendant's counsel objected to the portion dealing with constructive possession "insofar as based on the proofs in [the prosecution's] case it was always the theory he had actual possession." The court overruled the objection and read the jury the following definition:

"The law recognizes two kinds of possession, actual possession and constructive possession.

"A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it.

"A person who although not in actual possession knowingly has both the power and the intention at a given time to exercise dominion or control over a thing

either directly or through another person or persons is then in constructive possession of it."

Joint Appendix at 38 (quoting 1 E. Devitt & C. Blackmar, *supra*, § 16.07, at 512–13). The jury thereafter returned its verdict of guilty.

On appeal defendant sets forth two arguments. First, he contends the district court's instruction on constructive possession resulted in a constructive amendment to, or a variance from, the indictment. Second, defendant argues the district court committed reversible error in instructing the jury on an issue (constructive possession) on which the government had presented no evidence. Because we conclude that the second asserted error mandates reversal and a new trial, we need not discuss the variance argument.

**II.**

"It is of course well established that an instruction should not be given if it lacks evidentiary support or is based upon mere suspicion or speculation." *United States v. McLister*, 608 F.2d 785, 791 (9th Cir.1979). *See also Quercia v. United States*, 289 U.S. 466, 470, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933) (trial judge "may not charge the jury 'upon a supposed or conjectural state of facts, of which no evidence has been offered.'") (quoting *United States v. Breitling*, 61 U.S. (20 How.) 252, 254, 255, 15 L.Ed. 900 (1857); *United States v. McCoy*, 767 F.2d 395, 397 (7th Cir.1985); *United States v. Blevins*, 555 F.2d 1236, 1240 (5th Cir.1977), *cert. denied*, 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 761 (1978); *Kolp v. United States*, 2 F.2d 953, 953–54 (6th Cir.1924) (per curiam). In the present case, the government concedes that "neither party presented evidence of constructive possession":

The government's evidence showed that the defendant had actual possession, ... while defendant's version indicated that although he knew a gun had been pawned to Mrs. Brown, he did not even know where the gun was until the police officer found it under the mattress. Neither version offers any evidence in sup-

port of a verdict of guilty based on constructive rather than actual possession, as no evidence (other than of actual possession) indicated that defendant knowingly had the power and intention to exercise dominion and control over the gun. Brief for the United States at 9–10. *See United States v. Williams,* 526 F.2d 1000, 1004 (6th Cir.1975) (constructive possession means "power and intention to exercise dominion or control").

Accordingly, the district court erred in instructing the jury on constructive possession. It remains for us to determine, however, whether this error was harmless. In *United States v. Neuroth,* 809 F.2d 339 (6th Cir.1987) (en banc), this court determined that "[a]n error, not of constitutional dimension, is harmless unless it is more probable than not that the error materially affected the verdict." *Id.* at 342. "Errors in such matters as jury instructions ... generally have been considered 'nonconstitutional.'" *United States v. Valle-Valdez,* 554 F.2d 911, 916 (9th Cir.1977).[2]

The government argues that we should arrive at a similar conclusion to that reached in *United States v. McCoy,* 767 F.2d 395 (7th Cir.1985). In *McCoy,* the defendant was convicted of violating section 1202(a)(1). The Seventh Circuit determined that the district court erroneously instructed the jury on constructive possession because there was no evidence to support the charge. The court concluded, however, that the error was harmless beyond a reasonable doubt because both the government and the defense focused exclusively on actual possession. The court also noted that the officer's testimony that he found the gun in the defendant's waistband was uncontradicted. *Id.* at 397. Accordingly, the court concluded that the jury could not have been confused by the erroneous instruction. *Id.* at 398. Similarly, in the present case, the government argues that the only evidence presented by both parties was limited to the issue of actual possession.

We find the present case to be distinguishable from *McCoy.* Here, as in *McCoy,* the police officers' testimony that defendant was holding the gun provided ample evidence of actual possession. However, unlike *McCoy,* the defendant in the present case took the stand and flatly contradicted the officers' testimony. The case basically came down to a swearing match between the officers and defendant. In this connection, although we express no view as to defendant's credibility, we do note that defendant's version of the events is not implausible. Thus, we are not faced with an unlikely or contradictory defense. *Compare United States v. Hasting,* 461 U.S. 499, 511–12, 103 S.Ct. 1974, 1981–82, 76 L.Ed.2d 96 (1983); *Neuroth,* 809 F.2d at 342 (defense not likely to persuade the jury).

More importantly, because the circumstances fairly indicate that the constructive possession instruction affected the jury's verdict, we believe defendant's substantial right to a fair trial was prejudiced. *See United States v. Hathaway,* 798 F.2d 902, 911 (6th Cir.1986). The jury's inquiry as to whether defendant had to have the firearm in his hand suggests the jury was having difficulty resolving the contradicting testimony. The jury's subsequent verdict (reached in a matter of minutes, according to defendant) indicates the jury concluded defendant could be convicted even if it accepted defendant's testimony and disbelieved that of the officers.

Under these circumstances, we believe it more probable than not that the erroneous instruction materially affected the verdict in that the jury may well have convicted defendant under a theory of constructive possession. The record in this case does not permit us to conclude, as did the *McCoy* court, that "[i]f the erroneous jury instruction had not been given, the jury undoubtedly would have convicted the defendant of actual possession." 767 F.2d at 397. In short, defendant's substantial rights were prejudiced by the giving of the constructive possession instruction and the

---

2. *Valle-Valdez* was cited with approval in *United States v. Rasheed,* 663 F.2d 843, 850 (9th Cir. 1981), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982), which in turn was relied on by this court in *Neuroth,* 809 F.2d at 342. In *Neuroth,* we also applied the test for "nonconstitutional" errors to an erroneous jury instruction.

conviction cannot be allowed to stand. *See United States v. Garzon,* 688 F.2d 607, 609 (9th Cir.1982) (although government did not argue harmless error, conviction reversed where jury instructed on issue not supported by evidence); *United States v. San Juan,* 545 F.2d 314, 319 (2d Cir.1976) (prosecutor and defense tried case on theory that crime occurred on bus; held, "manifestly unfair" to allow conviction to stand where court's charge left open possibility that jury could find defendant committed crime in customs house, especially where facts suggested crime could not have occurred at that location); *United States v. Wyatt,* 442 F.2d 858, 861 (D.C.Cir.1971) (in trial for assault with dangerous weapon, no evidence presented that gun used in crime was loaded; held, reversal of conviction required in part because court's instruction that a loaded gun is a dangerous weapon was "surely erroneous and probably prejudicial."); *Kolp,* 2 F.2d at 954 (error in instructing jury on aiding and abetting, although not in the case as charged, testified to, or contended for, by government, sufficiently important to require reversal and grant of new trial.).

### III.

Accordingly, defendant's conviction is REVERSED and this case is REMANDED for a new trial.