21 F.3d 429
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Eric JONES, a/k/a Erick Jones, a/k/a Warren J. Lacy,
Defendant-Appellant.
 No. 93-1423.
 United States Court of Appeals, Sixth Circuit.
 March 30, 1994.
 
 Before: MILBURN and BOGGS, Circuit Judges, and MILES, Senior District Judge*
 PER CURIAM.
 
 
 1
 Eric Jones, a/k/a Erick Jones, a/k/a Warren J. Lacy, appeals his conviction and sentence for being a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g)(1). For the reasons which follow, we affirm both the conviction and sentence.
 
 
 2
 * On July 24, 1992, agents of the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), acting pursuant to a warrant, conducted a search for drugs, drug paraphernalia, drug proceeds, and firearms at 15340 Grayfield in Detroit, Michigan.[1] The defendant, Eric Jones,[2] was, at that time, residing with his girlfriend Michelle Thompson at the house, and he was present at the time of the search. The ATF agents found two firearms--a Winchester rifle and a Colt .45 caliber revolver--in a bedroom closet. The agents also found parole papers and identification belonging to Jones, as well as men's clothing, in the same bedroom where they found the firearms. Jones admitted to the agents that he was on parole and that he knew he was prohibited from possessing guns while on parole. He was arrested after the agents completed their search.
 
 
 3
 On August 4, 1992, a federal grand jury returned a single-count indictment against Eric Jones, a/k/a Erick Jones, a/k/a Warren Lacy, charging him with being a felon in possession of firearms in violation of 18 U.S.C. section 922(g). Jones filed numerous pretrial motions, including a motion to strike his alias from the indictment and a motion to suppress the guns which were seized in the search. Both motions were denied by the district court. A jury trial began on December 17, 1992. On December 22, 1992, the jury returned a guilty verdict.
 
 
 4
 Before sentencing, Jones filed a motion seeking a substantial downward departure from the sentencing guidelines based on "imperfect" defenses of duress and justification. In the motion, he claimed that the neighborhood in which he had been residing had been plagued with racial violence. On March 17, 1993, the district court sentenced Jones to 85 months in prison, which was within the applicable guideline range.
 
 II
 
 5
 Jones appeals the denial of his motion to suppress the firearms which were seized. He basically argues that the agents conducting the search of the 15340 Grayfield house exceeded the scope of the warrant in conducting their search. This court reviews a denial of a motion to suppress under an abuse of discretion standard. United States v. Worthington, 698 F.2d 820, 824 (6th Cir.1983).
 
 
 6
 Jones' argument that the agents exceeded the scope of the warrant is based on language contained in the warrant which authorized the seizure of "... any firearms, weapons and ammunition which are kept for the protection of said controlled substances or proceeds[.]" Appendix ("App.") at 33 (emphasis added). Jones stresses that the agents who conducted the search found no drugs at the residence, and he contends that in disregard of the limiting language of the warrant they conducted a "general exploratory rummaging" of all personal property located at the residence, thus violating the Fourth Amendment.
 
 
 7
 "A search does not become invalid merely because some items not covered by a warrant are seized." United States v. Henson, 848 F.2d 1374, 1383 (6th Cir.1988), cert. denied, 488 U.S. 1005 (1989). Moreover, "[a]bsent flagrant disregard for the limitations of a search warrant, the items covered by the warrant will be admissible." Id. The warrant in this case authorized the agents to search for drugs and weapons, and therefore the agents certainly did not flagrantly disregard the warrant's scope in searching through the occupants' personal effects and finding weapons in the house.
 
 
 8
 The modifying language contained in the warrant--that the weapons be "kept for the protection of said controlled substances or proceeds"--did not render the scope of the search conducted here unreasonable even though no drugs were found. However, it could potentially limit what weapons could be seized as evidence of a crime pursuant to the search. Even so, the "plain view" doctrine validates the seizure of the firearms in this case. See Horton v. California, 496 U.S. 128, 133 n. 5, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (distinguishing between "plain view" as used to justify seizure of an object, from an officer's mere observation of an item left in plain view; the latter involves no Fourth Amendment search, while the former implicates the Fourth Amendment's limitations on seizure of personal property).
 
 
 9
 The plain view test of the validity of a warrantless seizure has three components: (1) the officer's intrusion into the place from where the evidence could be viewed must not have violated the Fourth Amendment; (2) the item seized must be in plain view; and (3) the incriminating character of the item must be "immediately apparent." Id., 496 U.S. at 136. In this case, it is undisputed that the initial intrusion was supported by a valid warrant. Testimony presented at trial by ATF agent Scott Toth also showed that the firearms which were seized were discovered in plain view.[3]
 
 
 10
 Testimony presented at trial by agent Toth further showed that the firearms were discovered in the same bedroom approximately three feet away from parole documents bearing Jones' name. Transcript ("Tr.") at 88. Finally, testimony presented by agent Curtis Brunson indicated that Jones stated to the agents that he knew that by being in the residence and having access to the firearms that he was indeed violating his parole. Id. at 181. Therefore, the firearms, which could have been temporarily held while the search of the residence for drugs continued, became evidence of another crime (felon in possession) and could be seized and retained. In a highly similar case, United States v. Robinson, 756 F.2d 56, 60 (8th Cir.1985), the court so held. In Robinson, officers acting pursuant to a warrant which authorized a search for marijuana discovered a weapon, together with a letter from a state probation and parole office addressed to the defendant. The court affirmed the denial of suppression, holding that the letter "reasonably led the officers to believe that the appellant had a prior conviction and that he was a felon in possession of a firearm." Id. The plain view doctrine likewise applies here, and we therefore reject Jones' argument that the search and seizure of the weapons violated the Fourth Amendment.
 
 III
 
 11
 Jones argues that the evidence admitted at trial was insufficient to support his conviction on the felon in possession charge. The standard of review for claims of insufficient evidence is " 'whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Evans, 883 F.2d 496, 501 (6th Cir.1989) (emphasis in original, quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
 
 
 12
 Title 18 U.S.C. Sec. 922(g)(1) provides as follows:
 
 
 13
 It shall be unlawful for any person--
 
 
 14
 (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
 
 
 18
 The parties stipulated that Jones had been convicted of a crime punishable by imprisonment for a term exceeding one year. They also stipulated that the guns had travelled in interstate commerce. Therefore, the only issue left to be decided by the jury was whether Jones had knowing possession of the guns. Jones argues that the evidence was insufficient to show his possession of the guns.
 
 
 19
 As stated in United States v. Craven,
 
 
 20
 Possession may be either actual or constructive and it need not be exclusive but may be joint.... Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.... Both actual possession and constructive possession may be proved by direct or circumstantial evidence. It is not necessary that such evidence remove every reasonable hypothesis except that of guilt.
 
 
 21
 478 F.2d 1329, 1333 (6th Cir.) (citations omitted), cert. denied, 414 U.S. 866 (1973).
 
 
 22
 The government concedes that it presented no evidence that Jones "actually" possessed the guns. The government's theory of the case was that Jones had joint constructive possession of the guns with his girlfriend, Michelle Thompson. Jones, however, argues that the evidence did not show his dominion and control over the weapons because (1) the guns were not registered to him; (2) he was not the renter or owner of the house; (3) the guns were found in Thompson's bedroom closet; (4) Thompson's brother may also have stayed at the house; (5) no fingerprints were found on the guns; and (6) the clothing found in the bedroom was never identified as Jones' clothing.
 
 
 23
 In this case, the following trial testimony was presented supporting Jones' constructive possession of the guns: (1) Jones lived at the 15340 Grayfield house, having notified his parole officer that this was his address; (2) Jones was present in the home at the time of the search; (3) the guns were found in his girlfriend's closet, thus meaning that Jones also had a close relationship with someone who clearly had access to the guns; (4) the closet was open; (5) the closet contained men's shoes and clothing; (6) parole documents and identification belonging to Jones were found in close proximity to the guns; (7) the only other bedroom in the house appeared to be a child's bedroom (thus negating the inference that Jones did not reside in the same bedroom with his girlfriend); and (8) Jones admitted to the ATF agents that he knew the guns were in the house and that his having access to them violated his parole. In Craven, similar evidence was held ample to establish constructive possession of firearms, where (1) the defendant owned and lived in the house where they were found; (2) a gun was found in the master bedroom of the house, in which monogrammed men's shirts bearing the defendant's initials were also found; (3) the defendant slept in the room where the gun was found; and (4) when asked about the guns, the defendant stated that he collected guns, thus supporting an inference that the guns belonged to him. 478 F.2d at 1333-34. As in Craven, we conclude that the evidence presented in this case is sufficient to establish, at a minimum, joint constructive possession and therefore to support the jury's verdict on the firearms charge.
 
 IV
 
 24
 Jones argues that the district court's instructions to the jury effectively omitted the requirements of dominion and control, which are necessary to establish constructive possession. He further contends that the district court erred in refusing to give this circuit's pattern instruction on constructive possession.
 
 
 25
 "The standard on appeal for a court's charge to the jury is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." United States v. Martin, 740 F.2d 1352, 1361 (6th Cir.1984). "The question is 'what a reasonable juror could have understood the charge as meaning.' " United States v. Buckley, 934 F.2d 84, 87 (6th Cir.1991) (citation omitted). "Even if an instruction proves impermissible when viewed in isolation, the reviewing court upholds the instruction if it takes on a permissible meaning in the context of surrounding instructions." Id.
 
 
 26
 This circuit's pattern criminal jury instructions provide guidance, but they do not represent the only instructions which can be used in this circuit.[4] The district court is vested with broad discretion in formulating its charge. United States v. English, 925 F.2d 154, 158 (6th Cir.), cert. denied, 111 S.Ct. 2810, 2812 (1991). Therefore, we do not deem the district court's mere failure to give the pattern instruction to be error; rather, we must examine the substance of the refused instruction in comparison to the instructions which were given.
 
 
 27
 This circuit's pattern instruction on constructive possession, No. 2.10, reads in pertinent part as follows:
 
 
 28
 To establish constructive possession, the government must prove that the defendant had the right to exercise physical control over the [guns], and knew that he had this right, and that he intended to exercise physical control over [the guns] at some time, either directly or through other persons....
 
 
 29
 But understand that just being present where something is located does not equal possession. The government must prove that the defendant had actual or constructive possession of the [guns], and knew that he did, for you to find him guilty of this crime. This, of course, is all for you to decide.
 
 
 30
 Pattern Criminal Jury Instructions, U.S. Sixth Circuit District Judges Association, 1991 Ed. at 63. The instructions which the district court did give in this case included the following language:
 
 
 31
 The law recognizes two kinds of possession, actual possession and constructive possession.
 
 
 32
 A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it.
 
 
 33
 A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it....
 
 
 34
 An act or failure to act is knowingly done if done voluntarily and intentionally, and not because of mistake or accident or other innocent reasons.
 
 
 35
 But understand that just being present where something is located does not equal possession. The government must prove that the defendant had actual or constructive possession of the firearms and knew he did for you to find him guilty of these crimes. This of course is all for you to decide.
 
 
 36
 Tr. at 284-85. Much of this instruction which the district court did read to the jury, in particular the language regarding "dominion and control," is derived from Craven, 478 F.2d at 1333. Notably, the Committee Commentary to No. 2.10--the pattern instruction which Jones argues should have been given--states that the instruction "attempts to restate in plain English the general principles governing this subject stated by the Sixth Circuit in United States v. Craven, supra, 478 F.2d at 1333." The substance of the district court's given instruction and the substance of the pattern instruction on constructive possession are essentially the same; both require the jury to find that the government has proven the defendant's dominion and control over the guns. We conclude that the district court did not err in refusing to give the pattern instruction verbatim, as the given instructions fairly and adequately state this circuit's law on constructive possession.
 
 
 37
 Jones argues, alternatively, that the district court should not have instructed the jury on constructive possession at all because there was no evidence of it. " 'It is of course well established that an instruction should not be given if it lacks evidentiary support or is based upon mere suspicion or speculation.' " United States v. James, 819 F.2d 674, 675 (6th Cir.1987) (citation omitted). However, as we have already concluded, the evidence in this case was sufficient to establish joint constructive possession. The district court therefore did not err in giving the instruction.[5]
 
 V
 
 38
 Jones argues that the district court reversibly erred in refusing to grant him a downward departure from the guideline range sentence, based on the defenses of necessity and duress.
 
 
 39
 This circuit has held that a defendant may only appeal (1) sentences imposed in violation of the law, (2) sentences imposed as a result of an incorrect application of the guidelines, or (3) upward departures from the guidelines. United States v. Smith, 918 F.2d 664, 667 (6th Cir.1990), cert. denied, 498 U.S. 1125 (1991). "[A] district court's refusal to depart downward from a sentence within the properly computed guideline range is not appealable." United States v. Pickett, 941 F.2d 411, 417-18 (6th Cir.1991). Jones' sentence of 85 months was within the applicable range of 77 to 96 months. The sentence is simply not reviewable.
 
 
 40
 In an apparent attempt to obtain review of the district court's unreviewable action, Jones frames the issue in various ways. First, he argues that the district court refused to allow him to even raise a justification defense in mitigation of his sentence. However, Jones has pointed to no evidence which he sought to present which he was prevented by the court from presenting in connection with his sentencing. Based on our review of the record, it appears that all Jones did was to attach copies of some police reports to his motion for downward departure. These reports describe incidents in which the police were called to the 15430 Grayfield house by Michelle Thompson near the time of the search, due to apparent racial hostilities in the neighborhood.[6] Based on this evidence and on Jones' arguments, the court refused to order a downward departure.
 
 
 41
 The sentencing guidelines do allow the sentencing court to depart downward if it finds " 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration' " by the guidelines. United States Sentencing Commission, Guidelines Manual, Sec. 5K2.0 (Nov. 1992) (quoting 18 U.S.C. Sec. 3553(b)). The guidelines list two types of mitigating circumstances, which Jones argues were present here.[7] However, although a sentencing judge has discretion to depart from the guidelines, United States v. Maddalena, 893 F.2d 815, 818 (6th Cir.1989), the failure to do so is not reviewable. The guidelines sections on which Jones relies, Secs. 5K2.11 and 5K2.12, do not require departure; they merely describe acceptable bases for departure. The district judge in this case clearly understood that she had the authority to depart; she simply refused to depart. The district court did not misapprehend its authority, and therefore we find no basis to remand for resentencing.
 
 
 42
 Jones further argues that the district court effectively found that he waived his right to raise an incomplete justification defense at sentencing by not raising it at trial. Jones has conceded on appeal that he did not present this defense at trial because the facts were insufficient as a matter of law to support the defense under the governing law.[8] Appellant's Brief at 28. However, he contends that the district court's alleged refusal to consider the defense in mitigation of his sentence violated his Fifth Amendment right to remain silent.
 
 
 43
 The district court did consider Jones' justification defense in mitigation of sentencing, and rejected it on the merits. In refusing to depart, the district court stated, inter alia, that it found Jones' "imperfect" duress claim to be "all the less persuasive" because Jones had not presented it to the jury. Sentencing Tr. at 14-15. We fail to see how Jones' right to remain silent was violated by the district court's rejection of this defense. The district court never suggested that Jones himself would have to testify in support of a necessity defense. Indeed, Jones could have sought to present Thompson's testimony at trial regarding the alleged dangerousness of the neighborhood; she is the complainant identified in the police reports which he attached to his motion for departure. We conclude that Jones' right to remain silent was not violated by the district court's refusal to depart based on an imperfect justification defense, and we affirm the sentence imposed as unreviewable.
 
 VI
 
 44
 Jones argues that he was reversibly prejudiced by the district court's failure to strike his alias from the indictment and by reference to his alias in the presence of the jury after he agreed to stipulate to his identity.
 
 
 45
 This circuit strongly disapproves the practice of including aliases in indictments. United States v. Wilkerson, 456 F.2d 57, 59 (6th Cir.), cert. denied, 408 U.S. 926 (1972). "Only when proof of an alias is relevant to identifying the defendant should a court allow its inclusion in the indictment and its subsequent introduction at trial." Id. Jones' prior felony conviction, which formed part of the proofs supporting the present offense, was under an alias. However, Jones nonetheless contends that because he offered to stipulate to his prior conviction, there was no reason to include it in the indictment or to allow reference to it at trial.
 
 
 46
 The following stipulation was read to the jury:
 
 
 47
 It is hereby stipulated and agreed between the United States of America and the defendant, Warren Lacy, through their respective counsel, that the defendant, Warren Lacy, was convicted in a Michigan state court in 1989, under the name of Eric Jones, of a crime punishable by imprisonment for a term exceeding one year; that is, a felony.
 
 
 48
 Tr. at 71. Jones argues that once this stipulation was made, the use of his alias had no basis except to impart the general notion that he was a criminal. However, allowing the use of his alias in the indictment and during the trial was relevant to connecting him with the documents found in the bedroom only a few feet from the open closet in which the guns were found. ATF agent Toth testified that he found parole documentation bearing the name Eric Jones and a personal identification card bearing the name Warren Lacy in the bedroom near the guns. Tr. at 88. Toth also testified that Jones then told Toth that he went by both names. Id. at 93. The alias was also relevant to show that Jones acknowledged his residence, as opposed to mere presence, in the home where the guns were found.[9] Under the circumstances, because use of the defendant's alias was necessary to connect him with the firearms and with the residence where they were found, we conclude that the district court's refusal to strike the alias from the indictment was not error. See United States v. Hines, 955 F.2d 1449, 1454 (11th Cir.1992) (quoting United States v. Jorge-Salon, 734 F.2d 789, 791-92 (11th Cir.), cert. denied, 469 U.S. 869 (1984)) (" '[t]he use of an alias in an indictment and in evidence is permissible if it is necessary to connect the defendants with the acts charged' ").
 
 
 49
 Even if we were to conclude that the district court committed error in failing to strike defendant's alias from the indictment, we would conclude that the error was harmless. Based on the very nature of the charge in this case, the government had to establish to the jury that the defendant was a convicted felon. The defendant stipulated that he had a prior felony conviction under his alias; had he not so stipulated, the government would have been required to present proof of this fact. The jury was therefore bound to discover that the defendant was a criminal and that he had used an alias. We find no additional, inherently prejudicial effect arising from the use of the alias in the indictment or at trial. Cf. United States v. Williams, 739 F.2d 297, 300 (7th Cir.1984) (finding error in allowance of testimony that defendant was known by nickname "Fast Eddie," where the only possible purpose of eliciting the testimony was to impress upon the jurors that defendant was an "unsavory character" or criminal and no other evidence relating to defendant's character, reputation, or criminal past was introduced at trial).
 
 VII
 
 50
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 The affidavit in support of the application for the warrant indicated, among other things, that the residence was suspected of being a drug house and that firearms had been used on the premises. The affidavit did not implicate the defendant in any suspected offense; instead, it implicated two individuals by the names of James Bell and Raymond Lees Cosley
 
 
 [2]
 The defendant's true name is Warren Lacy. However, in our decision we will refer to him by his alias Eric Jones, as the parties have done in their briefs on appeal
 
 
 [3]
 Toth testified "When I entered the bedroom, I looked and observed a closet door open, and when I looked I observed two firearms in plain view. This firearm here was leaning up in the closet, in the back of the closet against the wall. This firearm here, the semi-automatic handgun, was resting on the top shelf in the closet." Transcript ("Tr.") at 78
 
 
 [4]
 The resolution of the judicial council adopting the Sixth Circuit pattern instructions states "[T]his Resolution shall not be construed as an adjudicative approval of the content of such instructions which must await a case-by-case review by the Court of Appeals." Pattern Criminal Jury Instructions, U.S. Sixth Circuit District Judges Association, 1991 Ed. at III
 
 
 [5]
 Because the government proceeded on a theory of constructive possession and presented evidence on this theory, Jones' reliance on United States v. James, 819 F.2d 674 (6th Cir.1987) is misplaced. In that case, the court held that it was reversible error to instruct the jury on constructive possession, where the government had presented only evidence of actual possession
 The district court did instruct on actual possession, although the government concedes that it presented no evidence of actual possession. However, because Jones has not argued that the district court erred in instructing on actual possession, we do not address whether the giving of such an instruction, in the absence of evidence of actual possession, is error.
 
 
 [6]
 One of the police reports describes an incident on or about June 25, 1992 in which Thompson received a letter containing death threats. It also reports that when Thompson went out to get her mail, a neighbor stated to her, "Nigger did [you] get your mail today." Another report describes an incident on or about July 8, 1992 in which shots were fired at the 15430 Grayfield residence and an unexploded homemade firebomb was found on the porch
 At the sentencing hearing, Jones' counsel ostensibly intended to have Thompson testify regarding the hostilities in the neighborhood. Sentencing Tr. at 14. However, before he was able to do so, the district court rejected the justification defense on its merits, apparently causing counsel to reconsider his decision to have Thompson testify.
 
 
 [7]
 First, U.S.S.G. Sec. 5K2.11 states as follows:
 Sometimes, a defendant may commit a crime in order to avoid a perceived greater harm. In such instances, a reduced sentence may be appropriate, provided that the circumstances significantly diminish society's interest in punishing the conduct, for example, in the case of a mercy killing....
 U.S.S.G. Sec. 5K2.12 also provides
 If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range.... Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency....
 
 
 [8]
 This circuit recognizes only a very narrow justification defense for possession of a firearm by a felon. The defendant must show (1) that he was under an unlawful, present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) that he did not recklessly or negligently place himself in a situation in which it was probable that he would be forced to choose the criminal conduct; (3) that he had no reasonable legal alternative to violating the law; and (4) that a direct causal relationship could be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm. United States v. Singleton, 902 F.2d 471, 472 (6th Cir.), cert. denied, 498 U.S. 872 (1990)
 
 
 [9]
 Jones' parole officer, Rodney Owens, testified that he knew him by the alias. Tr. at 152. He further testified that Jones reported a change of address to 15430 Grayfield on June 25, 1992. Id. at 155-57